THE TOWN OF PELHAM *v.* THE SCHOONER B. F. WOOLSEY, etc.

(*District Court, S. D. New York.* July 2, 1880.)

1. ADMIRALTY JURISDICTION—MARITIME CONTRACT—COMMON-LAW REMEDY.—A suit to enforce a maritime contract is within the exclusive jurisdiction of the admiralty, " saving to suitors in all cases the right of a common-law remedy, where the common-law is competent to give it." 1 St. 77, § 9.

2. SAME—SAME—EQUITABLE REMEDY.—The reservation of the act of congress relates to well-known forms of actions and remedies, distinguished alike from those presented *in rem* in courts of admiralty, and from those that are peculiar to courts of equity.

3. SAME—SAME—COMMON-LAW LIEN—EQUITABLE REMEDY.—A statutory remedy in the nature of a bill in equity to foreclose a mortgage, for the enforcement of a common-law lien founded upon a maritime contract, is not within the reservation of the act of congress limiting the admiralty jurisdiction.

4. CONTRACT—LIEN.—A lien is not a collateral contract; it is a right in, or claim against, some interest in the subject of the contract, created by the law as an incident of the contract itself.

*Scudder Harter* and *Mr. Hotchkiss,* for Hawkins.

*H. B. Kinghorn,* for Terrell.

CHOATE, D. J.    This is a libel for wharfage against the schooner B. F. Woolsey, which belongs to this port.    She is a vessel engaged in commerce not confined to ports within the state of New York.    After she was seized by the marshal, upon the process issued in this case, two parties appeared as claimants, each insisting that he is entitled, as owner, to bond the vessel and defend the suit.    The facts respecting their several claims are not disputed.    The claimant Daniel H. Terrell is conceded to have been the owner of the vessel. The other claimant is John P. Hawkins.    His only title is a bill of sale from a receiver appointed in a suit brought and prosecuted to judgment in a state court; and the question is whether this transfer is valid, and has extinguished the title of Terrell.

The suit in which the receiver was appointed was brought under a statute of New York passed on the eighth day of

May, 1869. Laws 1869, c. 738. The act is entitled "An act to provide for enforcing the lien of innkeepers, boarding-house keepers, mechanics, workmen, or bailees upon chattel property."

The first section provides that any innkeeper, mechanic, workman, or bailee, who shall have a lien upon any chattel property, may commence an action in any court having jurisdiction of the amount of such lien for the enforcement and foreclosure thereof.

The second section provides that such action shall proceed in all respects as civil actions in the court in which the same is commenced.

The third section provides that the judgment in such action may be the same as in other civil actions in the same court, and in addition thereto, if in favor of the plaintiff, may fix the amount of such lien, and adjudge the foreclosure of the same, and the sale of the chattel property affected thereby, and specify the officer who shall make such sale, and in such case shall direct the disposition of the proceeds thereof to the payment of the amount of such lien, with the costs of the action, and the costs and expenses of such sale, and shall provide for the safe-keeping of any surplus arising thereon, and the payment thereof to the owner of such chattel property, or his assigns or representatives.

The fourth section gives a right of appeal as in other cases.

The fifth section provides that nothing in the act shall be construed to affect or impair the right of any person to enforce or foreclose a lien upon chattel property in any other manner than is therein provided.

Hawkins commenced his action in the supreme court of the state, making Terrell, the owner, and one Whitehead, a mortgagee, the defendants. His complaint alleges that he was, at the times mentioned therein, a shipwright, engaged in the business of building and repairing vessels at City Island, New York; that on the twentieth day of August, 1879, the defendant Terrell was the owner of the schooner, and employed the plaintiff to make certain alterations and repairs

thereon; that in September, 1879, the schooner was delivered by Terrell into the possession of the plaintiff for the purpose of having said alterations and repairs made, and the plaintiff thereupon caused work and labor to be performed on her, and materials to be furnished to her, of the agreed price and value of $869.46, which sum said Terrell promised to pay to the plaintiff; that the alterations and repairs are completed, and said sum has been demanded and payment refused; that the said schooner is now, as she has been since she was delivered to the plaintiff, in his possession, and that he has a lien thereon for the value of such alterations and repairs; that it is necessary, for the safety of the schooner, that she be kept at a dock, and that a watchman be employed to guard her from danger; that there have already accrued expenses for wharfage and watchman's services, amounting to a considerable sum, and that the necessary daily expenses for wharfage and watchman are about $5.50; that the defendants have, or claim to have, some interest in, or lien upon, said schooner, which interest or lien, if any, accrued subsequent to the lien of the plaintiff.

The complaint then prays judgment that the defendants be foreclosed of all right, title, and interest or equity of redemption in said schooner, and that she may be decreed to be sold according to law; that out of the proceeds of such sale there be paid to the plaintiff the amount of his said claim, with interest, and the costs of the action, and the expense of keeping the vessel, and that the defendant Terrell be adjudged to pay any deficiency that may remain after the payment of said claim, interest, costs, and expenses, and that the plaintiff have such other and further relief as in the premises may seem just.   Both defendants appeared and answered.   Terrell admitted his ownership, subject to a mortgage held by Whitehead.   He admitted the employment of the plaintiff to do work and make repairs on the schooner, but denied that the plaintiff had possession of the vessel, or had any lien on it for his bill, and denied the value and amount of the work and materials, and set up certain damages by way of set-off or

recoupment.   The defendant Whitehead denied the plaintiff's
lien, and set up his mortgage, and denied the jurisdiction of
the court.   The cause was tried by the court without a jury.
The judge found that the plaintiff was in possession and had
a lien for the amount claimed, and that the lien was supe-
rior to the lien of the mortgage, and that the plaintiff was
entitled to a judgment of foreclosure and sale of said schooner,
with costs and the expenses of the action, and for the defi-
ciency, if any, against the defendant Terrell.   Judgment·was
entered that the schooner be sold at public auction, by a ref-
eree appointed for that purpose, upon ten days' public notice,
either or any of the parties to be at liberty to purchase, and
that the referee execute a bill of sale to the purchaser; that
the proceeds be applied to pay costs of sale, the plaintiff's
costs and expenses, and debt,—the surplus, if any, to remain
subject to the order of the court,—and that the defendant Ter-
rell pay the deficiency, if any, for which the plaintiff is to
have execution; that the purchaser be let into possession on
production of the bill of sale, and that the defendants, and all
persons claiming under them, be forever barred and foreclosed
of all right, title, or interest and equity of redemption in the
said schooner.   The judgment was afterwards amended by
appointing a receiver, instead of a referee, to carry it into
effect.   The claimant Hawkins became the purchaser at the
receiver's sale, and holds the bill of sale executed in pursu-
ance of the judgment.

The only question is whether the state court had jurisdic-
tion, or power and authority, to direct by judgment the sale of
the vessel, or, rather, of the defendants' interest therein; for
the proceeding does not purport to be, in a strict sense, a pro-
ceeding in rem,—that is, against all the world,—but only a pro-
ceeding affecting by judgment and sale the right, title, and
interest of the defendants sued in this action.

It has been argued on behalf of the claimant Terrell that the
testimony in the case did not show any possession on the
part of the plaintiff in the action; that the finding of the
court was in respect thereto against the evidence, or without

any evidence. But it is plain that if, in a case where the plaintiff had possession, the court had jurisdiction of the cause, then the court had power and authority to determine the question of possession, and the decision of the court on that fact cannot be attacked collaterally by the party against whom the finding on that issue is. His remedy is by appeal, or such other mode of review as is appointed by the laws of New York for obtaining a review and reversal of the judgment in case of error. *In re Griffith,* 18 N. B. R. 510.

It is claimed, on behalf of the purchaser Hawkins, that the state court had jurisdiction to order the sale of Terrell's interest in its judgment in that action. It is conceded that the contract set forth in the complaint in that action, being a contract for the repair of a domestic vessel, is a maritime contract. This has been held alike by the courts of the United States and by the court of appeals of New York. *The Josephine,* 39 N. Y. 19; *Brookman* v. *Hamill,* 43 N. Y. 554; *Poole* v. *Kermit,* 59 N. Y. 554–556; *The General Smith,* 4 Wheat. 438. The fact that the work consisted of alterations as well as repairs cannot make it the less a maritime contract; and the averment in the complaint that the vessel was *new,* must be taken as qualified by the other averment that before that it was already a vessel which was altered and repaired. This averment cannot make the contract one for building a vessel, which would not be maritime, although the vessel may be called in one sense new or rebuilt as the result of the alterations and repairs; and I understand that it is not claimed that the contract was not maritime.

No question, also, can be made on the other hand that a mechanic who takes possession of a vessel, and does work on her upon the employment of the owner, has his common-law lien on the vessel, so long as he remains in possession, for the amount of his proper charges, in the same manner that he would have upon any other chattel. That a suit to enforce a maritime contract is within the admiralty and maritime jurisdiction of the district courts of the United States, is also unquestionable; and that jurisdiction is exclusive,

except so far as by the statute of the United States the jurisdiction is reserved to the state courts. That statute contains the proviso "saving to suitors in all cases the right of a common-law remedy, where the common law is competent to give it." 1 U. S. St. 77, § 9; *Vose* v. *Cockcroft*, 44 N. Y. 415–425.

The question, then, is whether the remedy given by the state court, under the act of 1869, is a common-law remedy, which the common law, as understood in the act of congress, was competent to give. I think it entirely clear that the remedy was not a common law remedy, nor one which the common law, so understood, was competent to give. It is too clear for argument that the action is not a common-law action, either in its form or effect, or in the nature of the judgment. It is more in the nature, both in its form and in the character of the remedy given, of a bill in equity to foreclose a mortgage. The reservation of the act of congress relates to well-known forms of action and remedies, distinguished alike from those prosecuted *in rem* in courts of admiralty, and from those that are peculiar to courts of equity. Equitable remedies, and those which it was competent for equity to give, are not saved where the suit is brought for the enforcement of a maritime contract. It is no answer to say that the proceeding is not strictly *in rem* because it affects only the right or title of certain defendants against whom the suit is brought. That which is saved to the suitor is not all forms of action, and all remedies other than actions and remedies strictly *in rem*, but only common-law remedies. It is no answer to say that the lien sought to be enforced is not a maritime lien, but strictly a common-law lien. That does not make the new remedy given by this statute a common-law remedy. No lien created by a state law, whether it be by the unwritten and traditional law, which collectively we call the common law, or by express statute, is a maritime lien. Maritime liens are created and exist only by force of the maritime law. *The Belfast,* 7 Wall. 624–644.

Thus the lien given by state statute to a material man against a vessel is not a maritime lien. Yet a court of

admiralty may, unless restrained by statute or rule, when its jurisdiction is invoked to enforce a maritime contract, give full force and effect to a lien which, by the local law, has been made attendant upon, and a security for, the maritime contract. Nor would there seem to be any difference in the power of the admiralty court to give effect to such lien or security, whether in its terms it is a right in the vessel, analogous to a maritime lien, or a lien or security upon the right, title, and interest of a particular owner of the vessel. I see no reason why an admiralty court should not give effect to such a lien as this common-law lien, as well as to a lien created by a state statute. In clothing the courts of the United States with jurisdiction of maritime contracts, it cannot have been intended to leave the suitor without complete enforcement of his rights under the contract, in those courts, whatever those rights may be. But, if there is any difficulty in that respect, it does not enlarge the jurisdiction saved to the state courts. Nor can this proceeding in the state court be regarded as a suit upon the lien, apart from the contract, as upon an independent collateral contract; as, for instance, a mortgage given to secure the contract. A lien is not a collateral contract; it is a right in, or claim against, some interest in the subject of the contract, created by the law as an incident of the contract itself. The proceeding in the present case was, in form and substance, an action on the contract, and the remedy or relief given in that action was one unknown to the common law. Whatever rights the lien gave the lienor at the common law he can enforce. Thus he can retain possession till the debt is paid. He may reach the title of the owner, perhaps, by an attachment or execution. These are common-law remedies; and, if the common law gave him any other remedy, he is at liberty to pursue it. But no authority is cited for the proposition that the remedy given by this statute, by action and sale under the judgment, is one that was ever open to the lienor at the common law. It is very true that the state statutes heretofore considered and declared unconstitutional have been such as provided a

remedy, in form, *in rem*, but the ground of the decisions has been that the remedy given was not a common-law remedy, the action being for the enforcement of a maritime contract. Cases cited above. And the remarks of Mr. Justice Miller, in giving the opinion of the court in *The Hine* v. *Trevor*, 4 Wall. 555-571, are strictly applicable to this case: "Such actions may also be maintained *in personam* against a defendant in the common-law courts, as the common law gives; all in consistence with the grant of admiralty powers in the ninth section of the judiciary act. But it could not have been the intention of congress, by the exception in that section, to give the suitor all such remedies as might afterwards be enacted by state statutes, for this would have enabled the states to make the jurisdiction of their courts concurrent in all cases by simply providing a statutory remedy for all cases. Thus the exclusive jurisdiction of the federal courts would be defeated."

For these reasons I am of opinion that the state court had no jurisdiction in the action brought therein to direct a sale of the vessel under its decree for the purpose of enforcing the plaintiff's lien. Consequently, the claimant Terrell is alone entitled, as claimant, to bond the vessel and defend.