### THE MANHASSET.

*(District Court, E. D. Virginia.  January, 1884.)*

1. ADMIRALTY — ACTION FOR DEATH CAUSED BY NEGLIGENCE — VIRGINIA CODE, c. 145, §§ 7, 9.

   A state statute which gives to the administrator of one who has been killed by an accident a right of action for damages for the benefit of "husband, wife, parent, and child" of the deceased, against the person or corporation responsible for the accident, thereby creates a right which, though the killing be a marine tort, is not maritime, and a libel *in rem* brought by the administrator against a ship for the damages cannot be maintained.

2. SAME — STATE STATUTE GIVING RIGHT OF ACTION IN PERSONAM.

   A statute which gives a right of action *in personam* does not thereby give a right of action *in rem* in a similar case in admiralty.

3. SAME — STATES CANNOT CREATE MARITIME RIGHTS.

   The states of this Union cannot create maritime rights, or rights of action in admiralty; nor can they endow with a maritime right one who is not entitled to that right by the law maritime.

In Admiralty.

W. H. Black, whose administratrix, Frances Black, brings this libel, was a colored man, 64 years old, who had irregular employment in the United States navy yard, at Gosport, opposite Norfolk. He came upon the ferry-boat Manhasset, to cross the harbor to Norfolk, on the eighteenth of March, 1881. As the boat was about to touch her landing on the Norfolk side, and while it was 18 inches off, he stepped one foot upon the float, which slipped, and he fell, his other foot being caught by the boat as it came up to the float, and crushed. The wound was so severe that he died from it in one week from the day of the accident. He left a wife, aged 50 years, and children aged, respectively, 40, 33, 28, 26, 24, 21, 18, 12, and 10 years. This libel is based upon the statute of Virginia, c. 145, §§ 7, 8, and 9, of the Code of 1873, which authorizes suits for damages for personal injuries caused by the neglect or fault of other persons, or of corporations, to be brought after the death of the person injured, by his personal representative; the damages to be such as a jury may deem fair and just, not exceeding $10,000, which are to be paid to the widow, husband, wife, parent, and child of the deceased, in such proportions as a jury may direct; or, if there be no directions, then to be paid to those named, according to the statute of distribution in the domicile of the deceased. The law requires such actions to be brought within a year after the death of the injured person. This libel, which is a libel *in rem*, was brought within that period.

*W. H. & J. J. Burroughs*, for libelant.

*James F. Crocker* and *Shoup & Hughes*, for claimant.

HUGHES, J. An important and difficult question of jurisdiction presents itself at the threshold of this case, a question not yet settled, and which has been much confused by contradictory decisions. As requested by counsel, I will give to it an original consideration. The libel is founded on a statute of Virginia, similar to statutes on the same subject in most of the states, which overturns the common-law doctrine that actions and rights of action, for personal injuries, (torts,) die with the person injured; and provides that where a person who would be entitled to damages for an injury inflicted by another, dies of that injury, his administrator or executor may sue for the damages due the deceased for the benefit of the wife, husband, parent and child. It is to be observed that this state law, in giving such an action, thereby establishes the right of these next of kin to damages, upon appropriate proofs of fault and injury. It is also to be observed that the action which the statute gives is against the damnifier himself, is an action *in personam*, and that it does not give an inchoate lien upon the defendant's property for the damages to be recovered. The libel in the case at bar lays hold of this right of these next of kin, established by state law, as a maritime right, presumes the existence of a maritime lien upon the ferry-steamer, and, instead of being a proceeding *in personam* against the owners of the

steamer, is a proceeding *in rem* brought directly against the offending thing, the vessel herself. The theory of the pleader in this case, therefore, assumes two propositions to be true, namely,—*First*, that a state law can create a maritime right; and, *second*, that a state law, by giving a right of action *in personam* in a particular case which happens to relate to a ship, thereby confers upon the admiralty court jurisdiction of a suit *in rem* against that ship for the same cause of action.

This is a suit in admiralty brought in a court which, on its admiralty side, can deal only with maritime causes of action brought by persons having a right to sue in this forum. Assuming, for the purposes of the present case, that the killing of W. H. Black was a maritime *tort;* the question is, whether a right of action for damage accrues, under the maritime law, for the benefit of the next of kin named by the statute, to the administratrix of the deceased. The natural right of the father or mother to sue in their own persons, for their own benefit, for damages for the killing of a son; of a wife for the killing of a husband; of minor children for the killing of a father; or of persons in like natural relations to others slaughtered by negligent accidents, is not in question here. I concede (what, however, is not yet settled law) that such right exists under the maritime law, and may be sued upon in an admiralty court. But the state statute gives a very different right. It empowers an administrator to sue for the benefit of certain next of kin, and these next of kin may be neither father, nor mother, nor minor child, but most of them may be adult children like those of this man Black, or others having no natural right to damages for the killing of an intestate. It is essentially a statutory right, and is unknown to the maritime law. Can a statutory right, unknown to it before, be introduced into that law by state legislation, and can a person unknown to that law sue in an admiralty court on that right?

Let us consider what the maritime law is, how it arose, and how far it may be changed by local legislation. The maritime law, variously called the law of the sea, the law of shipping and admiralty, is that branch of the law-merchant which particularly relates to the affairs and business of the sea, to ships, to their crews, and navigation, and to the conveyance, on navigable waters, of persons and property. It is a system of usages and principles which has been adopted by the general consent of commercial nations. It is not to be found in any distinct code or body of legislation, but is so thoroughly exemplified in treatises and recorded adjudications as to have lost the character of an unwritten law. It has its authority and sanction in the consent of all nations, whose courts enforce its principles. After its claim to be founded on principles of natural justice, its highest value consists in its world-wide uniformity and acceptance. It has grown up almost exclusively out of the practical operations of commerce, and, from comparatively small dimensions, has expanded

under the developments of commerce, and with the improvements which have taken place in commercial methods and instrumentalities, into a great system of jurisprudence. It had its beginning in those ages in which the Roman law was dominant in the world, and derived most of its original principles from that source. Its forms of court procedure and methods of practice were derived from the Roman judicature.

It is not to be supposed, however, that this law has force in any particular jurisdiction contrary to the will of that sovereign power. Only so far as it is adopted by the legislation and enforced by the judicial tribunals of each sovereignty, has it force in each jurisdiction. It is only by consent that it is accepted throughout the world; but, as a general law, sanctioned by the general consent of commercial nations, it cannot be restricted or augmented by local legislation. While there is no doubt that each sovereignty may, within its own jurisdiction, and as to its own citizens, modify the maritime law at will, yet it is equally true that it cannot affect it as to the world at large. Nor can any special power make that a maritime contract or tort which is not so by the universal law-merchant, or take away from a contract which is maritime its maritime character; yet it may declare that any recognized principle of maritime law shall or shall not have force within its jurisdiction.

As to the power of each sovereignty over this law, the supreme court of the United States has said, in the case of *The Lottawanna,* 21 Wall. 572 *et seq.:*

"While it is true that the great mass of maritime law is the same in all countries, yet in each country peculiarities exist either as to some of the rules, or in the mode of enforcing them. * * * No one doubts that every nation may adopt its own maritime code; still, the convenience of the commercial world, bound together as it is by mutual relations of trade and intercourse, demands that in all essential things wherein those relations bring them in contact, there should be a uniform law, founded on natural reason and justice. Hence the adoption by all commercial nations (our own included) of the general maritime law as the basis and groundwork of all their maritime regulations. But no nation regards itself as precluded from making occasional modifications suited to its locality and the genius of its own people and institutions, especially in matters that are of merely local and municipal consequence, and do not affect other nations. * * * Each nation adopts the maritime law, not as a code having any independent or inherent force, *proprio vigore,* but as its own law, with such modifications and qualifications as it sees fit. Thus adopted and thus qualified in each case, it becomes the maritime law of the particular nation that adopts it. And without such voluntary adoption it would not be law. And thus it happens that from the general practice of commercial nations in making the same general law the basis and groundwork of their several maritime systems, the great mass of maritime law which is thus received by these nations in common comes to be the common maritime law of the world. * * *

"This view of the subject does not in the slightest degree detract from the proper authority and respect due to that venerable law of the sea, which has been the subject of such high encomiums from the ablest jurists of all countries, it merely places it upon the just and logical grounds upon which it is

accepted, and, with proper qualification. received with the binding force of law in all countries. \* \* \*

"That we have a maritime law of our own, operative throughout the Union, cannot be doubted. The general system of maritime law which was familiar to the lawyers and statesmen of the country when the constitution was adopted, was most certainly intended and referred to when it was declared in that instrument that the judicial power of the United States shall extend to all cases of admiralty and maritime jurisdiction. \* \* \* The constitution does not define the precise limits of the law thus adopted. \* \* \* It assumes that the meaning of the phrase 'admiralty and maritime jurisdiction' is well understood. \* \* \*

"One thing, however, is unquestionable, the constitution must have referred to a system of law co-extensive with, and operating uniformly in, the whole country. It certainly could not have been the intention to place the rules and limits of maritime law under the disposal and, regulation of the several states, as that would have defeated the uniformity and consistency at which the constitution aimed on all subjects of a commercial character affecting the intercourse of the states with each other or with foreign states."

From all that has been said, these things would seem to be clear: *First,* that the maritime law, existing as it does by the common consent of nations, and, being a general law, cannot be changed or modified as to its general operation by any particular sovereignty; *second,* that it has force in any country only by its adoption, express or implied, by that country, and may be modified in its special operation in that jurisdiction at the will of that special sovereignty; *third,* that it is by such adoption part of the federal law of the United States, and incapable of modification by state enactment—congress having exclusive power, under the constitution, "to regulate commerce with foreign nations, and among the several states, and with the Indian tribes;" and the judicial power of the United States, "exclusive of the state.courts," extending "to all cases of admiralty and maritime jurisdiction."

We have thus arrived at the particular question involved in the case at bar. As a general proposition, a state of this Union has no power to affect the law maritime, either by addition, subtraction, or alteration. To acknowledge the authority of a state of this Union, (not sovereign in its power over commerce,) to change in any particular the maritime law, would be in the end to destroy that law as a system of jurisprudence, by subjecting ships of commerce to a different law in every American port which they might enter. As to the exclusive power over this law, of the congress of the United States, an able judge has said, (*In re Long Island, etc., Co.* 5 FED. REP. 619:)

"Uniformity in the maritime law is one of its peculiar characteristics— one of the things which makes it most beneficial in its operation; and the great benefits to result from such uniformity in maritime law, as administered in the courts of the Union, was one of the inducements to the adoption of the constitution, and the controlling reason for conferring on the general government the exclusive jurisdiction of all admiralty and maritime causes, as well those arising in the commerce of the state on navigable waters as those arising in interstate and foreign commerce."

Though it is undoubtedly true, in general, that a state cannot give a right in admiralty, that is to say, a maritime right, which did not exist before, the proposition is not true as to rights in equity or at common law. As to these latter, the great body of laws administered in federal courts are of state authority. An instance of this sort of suit is furnished by *Ry. Co.* v. *Whitton*, 13 Wall. 270, in a case precisely like this at bar, except that the *tort* was inflicted by a railroad instead of a steam-boat, and in which an action at common law was brought in the United States circuit court by the administrator of the person killed, in strict accordance with a law of Wisconsin practically identical with the law of Virginia now under consideration. So, if the administratrix of William H. Black had been a citizen of North Carolina, and had brought her action in the United States circuit court sitting here, for this very cause of action, holding as I would that the statutory right sued upon was not maritime, I should have entertained the suit and left it to a jury to determine the amount of damages to be awarded. We are not dealing in the present case with municipal law, or with the general commercial law not maritime. These are administered concurrently by state and by federal courts, the one or the other having jurisdiction with reference to the residence of parties in suits, or to the authority, state or federal, by which the law administered has been enacted. The proposition at which we have arrived relates exclusively to the maritime law and the admiralty jurisdiction. It is, that a state cannot create a maritime right or confer jurisdiction, in any particular, upon an admiralty court. The libel under consideration, as before said, assumes both branches of this proposition to be true. The state of Virginia has enacted that where a person has been killed by the fault or negligent act of another, his executor or administrator may recover damages, not exceeding $10,000, for the injury. It has also enacted that the personal representative may sue for the damages, for the benefit of certain of the next of kin of deceased entitled under the local statute of distributions. It seems to me perfectly clear that this libel cannot be sustained on the basis of those provisions of the Virginia Code upon which the libel is founded. The right of an administrator to damages for injury to his intestate, when alive, is not a maritime right, and is unknown to the maritime law. The right of action to recover such damages does not belong, under the admiralty jurisdiction, to an administrator, and I think cannot legally be sustained in an admiralty court.

There are decisions in apparent contradiction to this view of the subject, and I come now to consider them. It will be observed that some of the cases about to be reviewed are brought by the father, or mother, or husband of the deceased, and assert a right, under the principles of natural justice, to recover. I am of opinion that suits of that character can be maintained in admiralty. Another, and a

different class, are founded upon state statutes; these are they which, I think, cannot be sustained.

*First,* as to the English cases. Acts of Parliament, 9 & 10 Vict. c. 93, called Lord CAMPBELL's act, and 27 & 28 Vict. c. 95, § 2, first created the right of action at common law for compensating the families of persons killed by accident. These acts did not confer jurisdiction in this matter upon the English high court of admiralty. If that court had jurisdiction in such cases, it could only be by virtue of 24 Vict. c. 10, which provides that the "high court of admiralty shall have jurisdiction over any claim for damage done by a ship." This clause was construed by the high court of admiralty and privy council to confer the jurisdiction to entertain libels for the benefit of the families killed by accident, in several decisions. See *The Sylph,* L. R. 2 Adm. & Ecc. 24; *The Guldfaxe,* Id. 325; *The Explorer,* L. R. 3 Adm. & Ecc. 289; *The Beta,* 2 Prec. Ch. 447; *The Franconia,* 2 Prob. Div. 163. But these decisions as to the admiralty jurisdiction in England may be considered as having been virtually overruled by the court of queen's bench in *Smith* v. *Brown,* L. R. 6 Q. B. 729; by the court of exchequer in *James* v. *Lon. & S. W. R. Co.* 7 Exch. 287; and by the court of common pleas in *Simpson* v. *Blues,* L. R. 7 C. P. 290. The policy of the English common-law courts seems to be to require claims for damages of the class under consideration, to be in all cases assessed by a jury. But these English cases are inapplicable in this country. There is no doubt that the maritime law and jurisdiction are subject in England to the power of parliament. Indeed, the admiralty jurisdiction has become there exclusively the creature of parliamentary and judicial legislation. No one in this country contends for a like power over maritime law and admiralty jurisdiction, even of congress; much less do the states possess it.

Coming to American decisions, I find but few of these directly in point.

The case of *Plummer* v. *Webb,* 1 Ware, 79, was one in which a father brought a libel *in personam* against the master and mates of a vessel, who had ill-treated the son in such manner as to cause his death. This libel was not founded upon any state statute, but upon the law of nature, and was not brought by the father in character of administrator. It is, therefore, essentially unlike the case at bar, which is an action *in rem,* by an administratrix, founded upon a state law. Judge WARE dismissed the libel, not, indeed, upon the ground that admiralty could not entertain an action by the father for such a cause, which he distinctly admitted, but on the ground that actual damage was not proven.

In *Crapo* v. *Allen,* 1 Sprague, 184, which was a case like ours, where the *tort* was undoubtedly maritime, but where the action was brought by an administrator of the injured deceased person, Judge SPRAGUE held that, notwithstanding a state statute like that of Vir-

ginia, the right of action for a tort died with the injured person, in admiralty as well as at common law. This opinion he afterwards modified in *Cutting* v. *Seabury*, Id. 522.

In *The David Reeves*, 5 Hughes, 90, the libel *in rem* was brought by the mother for the death of her son, in her character as mother, and not as administratrix, claiming under the general jurisdiction of admiralty, and not under the state statute of Maryland. Judge MORRIS sustained the jurisdiction, but awarded only $700 damages.

The case of *The Sea Gull*, Chase's Dec. 145, had been decided in the fourth circuit before that of *The Reeves*, and Judge MORRIS based his decision just cited on that authority. In *The Sea Gull* case a libel *in rem* was filed by a father for the death of a son, in his character of father, and not of administrator, no reference being made to state statute. The libel was sustained in a learned opinion by Chief Justice CHASE, and furnishes law to the courts of this circuit in similar cases, and to me in the case at bar.

In the case of *The Highland Light*, Chase's Dec. 150, also decided by Chief Justice CHASE, a libel *in rem* was brought by a widow and son for the death of a husband and father. The libel was dismissed on a construction given by the court to an act of congress which allowed an action *in personam* against the vessel libeled, the court holding that it was not the intention of congress to give a libel *in rem*. To that extent that decision is adverse to the present libel, which is brought *in rem*, under a statute giving only a remedy *in personam*. But the chief justice declared in an *obiter dictum* in the case, that under a state statute giving a right and a remedy to the family of a person killed by accident, an admiralty court might enforce the right by its own methods. I do not consider this *dictum* binding upon this court; especially as, in several subsequent cases, the supreme court of the United States, although opportunity has been abundantly afforded it to do so, has refrained from passing upon the question.

In the case of *L. I. Transp. Co.* 5 Reporter, 601, the district court for the southern district of New York seems to have held that an administrator may, under a state law giving right of action for damages in favor of the families of persons killed by accident, bring a libel *in rem* in admiralty; but this was but an incidental part of the case decided, and the question does not seem to have been specially considered. I do not feel bound to follow it.

In the case of *Holmes* v. *Ry. Co.* 5 FED. REP. 75, there was a libel *in rem* against a ferry-boat, by an administrator, claiming damages for an accidental killing of his intestate, in favor of his family, based on a state statute like that of Virginia. It was precisely such a case as the one at bar. In a learned and able opinion, Judge DEADY sustained the libel and awarded damages, holding as follows:

"The tort which caused the death of Perkins, having occurred on a navigable water of the United States, is a marine one; and, even if the maritime law does not give a remedy for the wrong, the law of the state, [of Oregon,]

having given the right to the administrator to recover damages therefor, this court, as a court of admiralty, has jurisdiction of a suit to enforce such a right."

In this decision the learned judge entirely pretermits the question whether, on a state statute which gives only a right of action *in personam*, an admiralty court is at liberty to found an action *in rem*, which assumes that the state statute gave not only a personal right of action, but also a lien on the offending steam-boat.

In the case of *The Garland*, 5 FED. REP. 924, which was precisely such a case as the one just cited, and as the one at bar, founded upon the statute of Michigan, Judge BROWN sustained the libel in deference to cases which he cited, but with the deprecatory remark that "against this concurrence of co-ordinate courts, I do not feel at liberty to set up *my own opinion*, particularly in view of the fact that the common-law rule seems to be consonant neither with reason nor justice."

In the case of *The Epsilon*, 6 Ben. 378, which was a petition by the owner of the steamer, whose boiler had exploded, to be allowed the benefit of the act of congress limiting the liability of the owners of vessels to claims for damage, there would seem to have been no libels actually filed against the vessel by administrators of persons who had been killed by the accident, and the judge, in his decision, did no more than recognize the liability of the vessel for such injuries, citing the case of *The Sea Gull*, *supra*, and others, in support of such claims. The case does not apply to the one at bar.

In the case of *The Sylvan Glen*, 9 FED. REP. 335, which is later than any of those before cited, a libel *in rem* was filed precisely similar to the one at bar, by the administrator (who was husband) of one Margaret Welsh, who had been killed by the Glen in running over and sinking a small boat, on board of which the deceased was. It was founded on a statute of New York identical with that of Virginia, on which the present libel is based. The court refused to sustain the libel, justifying its decision by the following observations:

"This statute does not provide for the survival of any right of action belonging to the deceased. It creates a liability where none before existed. It makes a new cause of action, namely, the death, and it declares who shall be liable to such action, and by whom, as well as for whose benefit, the action may be maintained. It is not doubted that the right created by this statute of the state may be enforced in a proper case by the courts of the United States; nor that it may be enforced in the admiralty when a marine tort is the foundation of the right. These propositions have not been controverted here; but they by no means afford ground on which to maintain this action; for this is an action *in rem*, and, if maintainable at all, must rest upon the proposition that the libelant, by virtue of this statute of the state, has a maritime lien upon the vessel for the damages resulting to the husband and next of kin of Margaret Welsh from the death of that person. No ground is suggested upon which such a proposition can be maintained. The words are, 'the person who, or the corporation which, * * * shall be liable.' Those words create no lien, much less a maritime lien; and, if they did, how can it be held that a state has power to create a maritime lien for the benefit

of this husband and next of kin? It is true that it is held by the supreme court of the United States that a lien created by a state statute for supplies and repairs to a domestic vessel, may be enforced by admiralty proceedings in the courts of the United States. But the rule in the class of cases referred to is peculiar. It is conceded by the court to be anomalous, and its basis on any sound principle doubted, (*The Lottawanna*, 21 Wall. 581;) and I know of no expressions of that court that will warrant the belief that any extension of such an anomaly would be approved. Besides, in this instance, the state statute creates no lien at all. It is not seen, therefore, how, in any aspect, the statute upon which the libelant relies, can afford a right of action against this vessel."

I cannot but express a full concurrence in this opinion of Judge BENEDICT. As to the lien upon domestic vessels, in home ports, in favor of material-men, for repairs, materials, and supplies furnished at home, the supreme court of the United States assumed in its twelfth rule in admiralty, that the admiralty law of the United States, though giving a right of action to the material-man *in personam*, did not give him a lien and right of action *in rem* in the home port. Under the general law maritime, that lien did exist. It was in order to cure one anomaly in the American law of admiralty that another had to be resorted to; and the supreme court was driven to the expedient of allowing our admiralty courts to assume that where a state law gave a statutory lien to material-men for supplies, credit must be presumed to have been given to the ship itself, irrespectively of ownership, and on that presumption, to entertain libels *in rem* against the ship. Yet it is no great anomaly where a maritime right exists giving a right of action *in personam* in admiralty, and the state superadds a lien upon a ship, for the admiralty court to entertain an action *in rem* on the basis of that lien.

Another anomaly in the admiralty jurisprudence of the United States is furnished by the pilot laws of the several seaboard states. Pilots and their transactions are subjects, all the world over, of the admiralty law and jurisdiction. Congress has power to pass general pilot laws for the the whole Union which would supersede the pilot laws of the several states. But congress has not yet exercised this constitutional power, and has thereby forced upon our admiralty courts the necessity of administering their jurisdiction over pilots more or less on the basis of state laws.

But these liens of material-men depending upon state statutes, and the matter of pilots' fees given by state laws, which pilots are allowed to libel for *in rem* in admiralty, are exceptions to the general rule, —otherwise without exception,—that rights created by state statute, unless identical with maritime rights, are not maritime, and cannot be made the basis of libels *in rem* in admiralty. As an action by an administratrix for the benefit of certain next of kin of W. H. Black, based upon a right created by state law, and unknown to the law maritime, I must hold that this libel cannot be sustained, and must be dismissed. But it shall be without prejudice, and without costs.

I have already virtually expressed the opinion that the widow of the deceased man, Black, and his minor children, have a right of action, by libel *in rem*, against the ferry-boat Manhasset, in their own name, for their own benefit. Such a libel may be joint. The decision of Chief Justice CHASE in the case of *The Sea Gull, supra,* establishes the validity of such a libel in this circuit. I would maintain its validity independently of that precedent. Such a right of action is a maritime right conferred by the general law maritime, (Domat, Civil Law, pt. 1, bk. 2, tit. 8, § 1, art. 4; Grotius, lib. 2, c. 17, § 13; Ruth. Inst. 206; Bell, Prin. Sc. Laws, p. 748, § 2029; Ersk. Inst. bk. 4, tit. 4, § 105;) and is not limited as to time by the 12 months' limitation of the state statute. If a libel of that character is brought, I will entertain it. It would probably be competent to allow the present libel to be amended so as to make it one in which the widow and minor children of the deceased shall sue in their own right, for their own benefit. I will hear a motion for that purpose.