[S. F. No. 7398.   In Bank.—February 3, 1917.]

NORTH PACIFIC STEAMSHIP COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents; GEORGE ROSE, Applicant.

WORKMEN'S COMPENSATION ACT—JURISDICTION OF INDUSTRIAL ACCIDENT COMMISSION — ACCIDENT TO SEAMAN ON HIGH SEAS — ADMIRALTY JURISDICTION.—The Industrial Accident Commission of this state has jurisdiction to make an award of compensation in case of an accident to a seaman employed on a vessel owned by citizens of California, who was injured while his vessel was upon the high seas. The federal courts, under their admiralty and maritime jurisdiction, have not exclusive jurisdiction in such a case.

ID.—COMMON-LAW REMEDY SAVED TO SUITORS BY JUDICIARY ACT.—The saving clause of the federal judiciary act of 1789, granting admiralty jurisdiction to the district courts, but "saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it," is not limited to the remedies at common law then existing, and did and does include rights and remedies which might subsequently be created by statute.

ID.—STATUTORY REMEDY IS A COMMON-LAW REMEDY.—The remedy provided by the Workmen's Compensation Act is a remedy within the meaning of the saving clause of the federal judiciary act, and, being in no sense a proceeding *in rem*, and involving due process of law, exists concurrently with the right to proceed in admiralty.

APPLICATION for a Writ of Certiorari to review an award of the Industrial Accident Commission of the State of California.

The facts are stated in the opinion of the court.

H. W. Glensor, C. H. Sooy, and C. L. Moore, for Petitioner.

Ira A. Campbell, and McCutchen, Olney & Willard, *Amici Curiae,* on Petition for a Rehearing.

Christopher M. Bradley, for Respondents.

F. R. Wall, for Applicant.

HENSHAW, J.—The respondent, the Industrial Accident Commission of the state of California, assumed jurisdiction and made its award in the case of a seaman in the employ of the petitioner, who was injured while his vessel, owned by citizens of this state, was upon the high seas. Application for a writ of review was granted by this court. This application was based upon the contentions that the United States district courts, under their admiralty and maritime jurisdiction, were alone empowered to deal with the question, and that the Industrial Compensation Act of California, [Stats. 1913, p. 279], in so far as it was sought to apply it to seamen, was an unconstitutional usurpation of that jurisdiction. This statement of the controversy demonstrates that the question is one peculiarly of federal cognizance and that the final arbiter in resolving and answering it is the supreme court of the United States. For this reason, and being advised that the identical question was *sub judice* in that tribunal, the decision of this case was postponed to await and to follow the decision of that court. Its decision, however, has been so long delayed, that we have deemed it inexpedient longer to postpone our own decision, though it is with reluctance that we take up the consideration thus in advance of its final disposition by the one court whose interpretation will be all-controlling. So to the end that if we do err the flaws in our reasoning may readily be detected, we have thought it best to endure the just accusation of prolixity in here setting forth our views at some length.

The constitution of the United States (art. III, sec. 2, par. 1) declares that the judicial power of the United States shall extend "to all cases of admiralty and maritime jurisdiction." The controversy which had arisen in England in the not unsuccessful efforts of the common-law courts to throttle the courts of admiralty was familiar to the framers of that constitution. Equally familiar to the jurist is the construction put by the courts of the United States upon this language. Thus in the leading case of *De Lovio* v. *Boit et al.,* 7 Fed. Cas. 417, No. 3776, [2 Gall. 398], Judge Story, going over the whole question of admiralty jurisdiction, concludes his review by declaring that he was "without the slightest hesitation ready to pronounce that the delegation of cognizance of 'all civil cases of admiralty and maritime jurisdiction' to the courts of the United States comprehends all maritime contracts, torts, and injuries." As admiralty and maritime jurisdiction then has to do with all things touching mariners and their ships while seafaring, there can be no hesitation in saying that the injury of this seaman upon the high seas presents a case within the cognizance of admiralty. (*Insurance Co.* v. *Dunham,* 11 Wall. (U. S.) 1, [20 L. Ed. 90]; Benedict on Admiralty, sec. 182 et seq.) Whether or not admiralty would or could decree an award for this injury, not founded upon tort, presents an entirely different question.

Moreover, it is so well settled as scarcely to need the citation of authority, that this jurisdiction is exclusive in the federal courts. (*The Hine* v. *Trevor,* 4 Wall. (U. S.) 555, [18 L. Ed. 451]; *The Eagle,* 75 U. S. (8 Wall.) 15, [19 L. Ed. 365]; U. S. Rev. Stats., sec. 563, subd. 8.)

The next fact to be noted is that the jurisdiction of the federal courts in admiralty rests upon the constitution, and that such jurisdiction is not dependent upon and cannot be enlarged or abridged by Congress. (*Watts* v. *Camors,* 115 U. S. 353, [29 L. Ed. 406, 6 Sup. Ct. Rep. 91]; *The J. E. Rumbell,* 148 U. S. 1, [37 L. Ed. 345, 13 Sup. Ct. Rep. 498]; *The Blackheath,* 195 U. S. 361, [49 L. Ed. 236, 25 Sup. Ct. Rep. 46]; *The Lottawanna,* 21 Wall. (U. S.) 558, [22 L. Ed. 654]; *The Chusan,* 5 Fed. Cas. No. 2717; 2 Story, 455.) Nor yet has any state of the United States the power to enlarge or diminish the admiralty jurisdiction of the federal courts. (*The J. E. Rumbell,* 148 U. S. 1, [37 L. Ed. 345,

13 Sup. Ct. Rep. 498] ; *Steamboat Orleans* v. *Phoebus,* 11 Pet. (U. S.) 175, [9 L. Ed. 677] ; *The Lottawanna,* 21 Wall. (U. S.) 558, [22 L. Ed. 654] ; *Butler* v. *Boston & Savannah S. Co.,* 130 U. S. 527, [32 L. Ed. 1017, 9 Sup. Ct. Rep. 612] ; *Workman* v. *Mayor of New York etc.,* 179 U. S. 552, [45 L. Ed. 314, 29 Sup. Ct. Rep. 212] ; *The Chusan,* 5 Fed. Cas. No. 2717, 2 Story, 455; *The Manhasset,* 18 Fed. 918; *Cornell Steamboat Co.* v. *Fallon,* 179 Fed. 293. [102 C. C. A. 345].) It becomes necessary here to consider briefly what is meant by the word "jurisdiction" as employed in all these cases, holding that neither Congress nor the legislature of any state has the power to enlarge or abridge the admiralty jurisdiction of the federal courts. It seems manifest from the adjudications that jurisdiction as the word is thus employed means that general jurisdiction over all cases of admiralty and maritime cognizance, and that the decisions are to be understood as declaring only that neither Congress nor the legislatures of the states can strip the courts of admiralty of any part of the jurisdiction which was theirs under the substantive law of admiralty at the time the constitution was adopted. Equally manifest is it that the decisions do not mean that the national Congress may not create new rights and new remedies within the scope of this general jurisdiction, and equally true is it that the state legislatures may in some instances, at least, create rights and remedies having clearly to do with maritime affairs, which rights and remedies may be enforced in the state's tribunals, without regard either to their acceptance in admiralty or to the fact that they seemingly trench upon the admiralty jurisdiction reserved to the federal courts.

All of this arises under the language of the judiciary act of Congress of 1789, by which act the granting of admiralty jurisdiction to the district court was accompanied by a "saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it." But as the states have thus surrendered all of their admiralty jurisdiction, as the exclusive jurisdiction of all of these questions and cases is still in the federal courts (*The Hine* v. *Trevor,* 4 Wall. (U. S.) 555, [18 L. Ed. 451] ; *Town of Pelham* v. *The B. F. Woolsey,* 3 Fed. 457), and as only such *remedies* as are or may be afforded by the common law are made available to suitors, it would appear that a state could neither

create a new right in admiralty nor enforce any remedy which it may have provided for that right until recognition in admiralty and by admiralty of the existence of that right; or, in other words, until its adoption by admiralty as a part of its substantive law. But to the contrary it seems that such reasoning is wholly fallacious. Thus, where the state statute gave a right of action for recovery for damages for the death of a sailor occasioned by tort while on the high seas, it is held that a recovery may be had under this statute both in the state courts and in the federal courts, and this notwithstanding the fact that such a case is one of "admiralty and maritime jurisdiction," and that admiralty, in this respect running current with the common law, gave no right of action for such a death. (*Steamboat Co.* v. *Chace,* 16 Wall. 522, [21 L. Ed. 369]; *Sherlock* v. *Alling,* 93 U. S. 99, [23 L. Ed. 819]; *Fisher* v. *Boutelle Trans. & Towing Co.,* 162 Fed. 994; *International Nav. Co.* v. *Lindstrom,* 123 Fed. 475, [60 C. C. A. 649]; *The Harrisburg,* 119 U. S. 213, [30 L. Ed. 358, 7 Sup. Ct. Rep. 140]; *The Hamilton,* 207 U. S. 398, [52 L. Ed. 264, 28 Sup. Ct. Rep. 133]; *Aurora Shipping Co.* v. *Boyce,* 191 Fed. 966, [112 C. C. A. 372].)

In *International Nav. Co.* v. *Lindstrom,* 123 Fed. 475, [60 C. C. A. 640], it is said by the circuit court of appeals of the second district: "The territorial sovereignty of a state extends to a vessel of the state when it is upon the high seas, the vessel being deemed a part of the territory of the state to which it belongs; and it follows that a state statute which creates a liability or authorizes a recovery for the consequences of a tortious act operates as efficiently upon a vessel of the state when the vessel is beyond its boundaries as it does when it is physically within the state." The reasoning of the circuit court of appeals was that as a matter of comity the court in admiralty would take cognizance of, and give effect to, a right created by a state. And this extremely elastic power of the courts of admiralty so to do is further emphasized in *The Hamilton,* 207 U. S. 398, [52 L. Ed. 264, 28 Sup. Ct. Rep. 133]. There a Delaware statute made provision for recovery by the heirs or representatives for death resulting on the high seas arising from tort. The pronouncement of the supreme court of the United States, speaking through Mr. Justice Holmes, is that until Congress acts on the subject, a state may legislate in regard to the duties and

liabilities of its citizens and corporations while on the high seas. The reasoning is that the saving clause of the judiciary act "saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it, leaves open the common-law jurisdiction of the state courts over torts committed at sea." "And," so proceeds the opinion, "as the state courts in their decisions would follow their own notions about the law and might change them from time to time, it would be strange if the state might not make changes by its other mouthpiece, the legislature." While touching the inherent power of the admiralty courts to enlarge the scope of their activities by adopting and applying new rights and new remedies created by state courts, it is said: "Being valid, it [the state law] created an *obligatio,* a personal liability of the owner of the Hamilton to the claimants. (*Slater* v. *Mexican National R. R. Co.,* 194 U. S. 120, [48 L. Ed. 900, 24 Sup. Ct. Rep. 581].) This, of course, the admiralty would not disregard, but would respect the right when brought before it in any legitimate way. . . . The liability would be recognized in all. Nor would there be produced any lamentable lack of uniformity. Courts constantly enforce rights arising from and depending upon other laws than those governing the local transactions in the jurisdiction in which they sit."

If we are successful in following this reasoning, it means that while state legislatures cannot in terms enlarge the jurisdiction of admiralty, they may pass laws creating new rights over matters within the jurisdiction of admiralty, and may enforce those rights in the state courts, upon the theory that Congress has been remiss in its failure to pass similar enactments covering the same subject matter. And furthermore, since these state statutes are thus valid, it is within the power, and seemingly it is the duty, of admiralty to enlarge its own jurisdiction by acquiescing in and taking cognizance of the rights and remedies thus created by the state legislatures. At the foundation of this reasoning there would appear to lie the premise that if a state legislates in advance of Congress, it is to be concluded that Congress, through inadvertence or negligence, has failed to pass like legislation, and therefore what might otherwise appear to be the reasonable assumption, viz., that Congress, after consideration, had declined or refused to legislate under the

conviction that existing laws were adequate, is, of course, denied a consideration. And finally, it is to be noted that the earlier utterances of the supreme court, declaring that one of the potent reasons why exclusive jurisdiction and control of all these questions was vested in admiralty, was to preserve symmetry and uniformity in its jurisprudence, as pointed out in the Chusan case, *supra,* and with great vigor and clearness by Mr. Justice White in *Workman* v. *Mayor of New York etc.,* 179 U. S. 552, [45 L. Ed. 314, 29 Sup. Ct. Rep. 212], where he said: ''The practical destruction of a uniform maritime law, which must arise from this premise, is made manifest when it is considered that if it be true that the principles of the general maritime law giving relief for every character of maritime tort where the wrongdoer is subject to the jurisdiction of admiralty courts can be overthrown by conflicting decisions of state courts, it would follow that there would be no general maritime law for the redress of wrongs, as such law would be necessarily one thing in one state and one in another; one thing in one port of the United States, and a different thing in some other port. As the power to change state laws and state decisions rests with the state authorities by which such laws are enacted or decisions rendered, it would come to pass that the maritime law affording relief for wrongs done instead of being general and ever-abiding, would be purely local—would be one thing to-day and another thing to-morrow. That the confusion to result would amount to the abrogation of a uniform maritime law is at once patent,''—it is to be noted, we repeat, that this symmetry and lack of uniformity we are now told would not be ''lamentable.''

With this law and reasoning before us we may make our more or less successful endeavor to strike at the heart of the matter before us. Our Workmen's Compensation Act is an economic and sociological development in legislation. It creates a right of compensation to the workman without regard to the question whether his injury was occasioned by tort. This law we have declared to be valid. (*Western Indemnity Co.* v. *Pillsbury,* 170 Cal. 686, 688, [151 Pac. 398, 10 N. C. C. A. 1].) Congress has been remiss in its failure to enter and cover this field of legislation. Assuming for the moment that the remedy of our state law comes within the scope and purview of a ''remedy afforded by the com-

mon law," there is created and imposed a new *obligatio*—a personal liability upon the part of the owner of the vessel. Admiralty will respect this right when brought before it. But whether it does or not, it is entitled to efficacy as well as respect by all state tribunals, and admiralty itself is under the compulsion to respect it if the state statute, even though it creates a new right and a new remedy therefor, is within the saving clause of the judiciary act and to that question we now come.

Of course, at the time of the adoption of our constitution and of the passage of the judiciary act, the common law knew no right of action for a death, even when it was occasioned by tort, and of course it knew of no action for injury or death not occasioned by tort, and had no remedy for either. Neither did admiralty. Furthermore, except in the broadest sense, acts of parliament form no part of the common law, and very frequently are in derogation of it. Nevertheless the language of the judiciary act is not limited to the remedies at common law then existing, and did and does include rights and remedies which might subsequently be created by statute. In *Knapp, Stout & Co.* v. *McCaffrey*, 177 U. S. 638, [44 L. Ed. 921, 20 Sup. Ct. Rep. 824], this matter is considered at some length. There a bill in equity had been brought in a state court to foreclose a common-law lien upon a raft. This bill in equity was held not to be an invasion of the exclusive admiralty jurisdiction of the district courts, but to be a proceeding to enforce a common-law remedy within the saving clause, and it is said:

"The real question is whether the proceeding taken is within the exception 'of saving to suitors in all cases the right of a common-law remedy, where the common law is competent to give it.' It was certainly not a common-law action, but a suit in equity. But it will be noticed that the reservation is not of an *action* at common law, but of a common-law *remedy;* and a remedy does not necessarily imply an action. A remedy is defined by Bouvier as 'the means employed to enforce a right, or redress an injury.' While, as stated by him, remedies for nonfulfillment of contracts are generally by action, they are by no means universally so. Thus, a landlord has at common law a remedy by distress for his rent —a right also given to him for the purpose of exacting compensation for damages resulting from the trespass of cattle.

A bailee of property has a remedy for work done upon such property, or for expenses incurred in keeping it, by detention of possession.  An innkeeper has a similar remedy upon the goods of his guests to the amount of his charges for their entertainment; and a carrier has a like lien upon the thing carried.  There is also a common-law remedy for nuisances by abatement; a right upon the part of the person assaulted to resist the assailant, even to his death; a right of recaption of goods stolen or unlawfully taken, and a public right against disturbers of the peace by compelling them to give sureties for their good behavior.  All these remedies are independent of an action.''

''Some of the cases already cited recognize the distinction between a common-law action and a common-law remedy. Thus, in *The Moses Taylor*, 4 Wall. 411, 431, [18 L. Ed. 397], it is said of the saving clause of the judiciary act: 'It is not a remedy in the common-law courts which is saved, but a common-law remedy.' To the same effect is *Moran* v. *Sturges*, 154 U. S. 256, 276, [38 L. Ed. 981, 14 Sup. Ct. Rep. 1019].''

Without further quotation, reference may be made to *Colorado Mid. Ry. Co.* v. *Jones*, 29 Fed. 193, which case is quoted with approval by the United States supreme court in *Searl* v. *School Dist. No. 2*, 124 U. S., at page 200, [31 L. Ed. 415, 8 Sup. Ct. Rep. 460].  The substance of these decisions seems to be that a common-law remedy as employed in the judiciary act means any remedy, with or without action or jury, which is a substitute for a suit at law, whereby a liability is imposed after due process of law.  In brief, the decisions of the supreme court of the United States leave no room for doubt but that touching torts committed on the high seas a state may create on behalf of the injured person, his heirs or representatives, new rights and new remedies, and provide for the maintenance of those rights and the enforcement of those remedies in her own courts, without the slightest regard to admiralty, under the construction which has been put upon the saving clause of the judiciary act, aided by the further reasoning and conclusion that the exclusive jurisdiction of admiralty has reference only (so far as concerns this question) to a direct libel *in rem* against the vessel itself.  And where the suitor does not seek this particular form of relief, but prosecutes his action *in personam*, he may have resort to

the courts of the state, without the slightest regard to the jurisdiction of admiralty. (*Aurora Shipping Co.* v. *Boyce,* 191 Fed. 966, [112 C. C. A. 372] ; *The Osceola,* 189 U. S. 172, [47 L. Ed. 760, 23 Sup. Ct. Rep. 483] ; *Taylor* v. *Carryl,* 61 U. S. (20 How.) 583, [15 L. Ed. 1028] ; *Knapp, Stout & Co.,* v. *McCaffrey,* 177 U. S. 638, [44 L. Ed. 921, 20 Sup. Ct. Rep. 824] ; *Rounds et al.* v. *Cloverport etc. Co.,* 237 U. S. 303, [59 L. Ed. 966, 35 Sup. Ct. Rep. 596].) That due process of law is provided for in our Workmen's Compensation Act we have already decided. So, also, have we decided that the imposition of liability upon an employer to compensate his employee for injuries received by the latter in the course of employment, without negligence or fault upon the part of the employer, does no violence to the employer's rights under the constitution of the United States or of this state. (*Western Indemnity Co.* v. *Pillsbury,* 170 Cal. 686, [151 Pac. 398, 10 N. C. C. A. 1].) It is unquestioned that Congress has not legislated upon this subject matter so far as concerns men who go down in ships to the seas. We perceive no force in petitioner's contention that in its operation the state act is an unwarranted interference with the foreign commerce of the nation, and upon this we are quite in accord with *The City of Norwalk,* 55 Fed. 103, *Jensen* v. *Southern Pacific Co.,* 215 N. Y. 514, [Ann. Cas. 1916B, 276, L. R. A. 1916A, 403, 109 N. E. 601], and *Kennerson* v. *Thames Towboat Co.,* 89 Conn. 367, [L. R. A. 1916A, 436, 94 Atl. 375].

In conclusion, a word should be said of the decisions of two of the courts of last resort of two maritime states which have treated of this question as bearing on their acts for the compensation of workmen. In the *Matter of Walker* v. *Clyde S. S. Co.,* 215 N. Y. 529, [Ann. Cas. 1916B, 87, 109 N. E. 604], the court of appeals of that state held, as we hold here, that the remedy provided by the Workmen's Compensation Act is a remedy within the meaning of the saving clause of the federal judiciary act, and, being in no sense a proceeding *in rem,* may exist concurrently with the right to proceed in admiralty. In *State ex rel. Jarvis* v. *Daggett,* 87 Wash. 253, [L. R. A. 1916A, 446, 151 Pac. 648], the supreme court of that state expressed a contrary view, holding that its compensation act was not meant to apply to maritime injuries and torts. It based its conclusion upon two features of the Washington act, which are likewise found in the California

statute.  One of these was the provision abolishing all other remedies and limiting the right to compensation to proceedings under the provisions of the act itself.  But concerning this matter we think it sufficient to say that the similar language of our own act will not be construed as designed to exclude admiralty from a jurisdiction which it possesses, but merely to limit suitors in the tribunals of the state to the forum provided for the determination of these questions, viz., the Industrial Accident Commission.  So understood, the language imports no more than a declaration that if a suitor shall seek redress *in personam* for such an injury before a state tribunal, he must go before the accident commission and the accident commission alone.  The second branch of reasoning under which the supreme court of Washington concluded that its law was not designed, or, if designed, could not have any effect upon such maritime cases, was because the law provided a recovery different from that provided by the United States statutes.  The Revised Statutes of the United States, sections 4283 and 4289, [4 Fed. Stats. Ann., pp. 839, 852; U. S. Comp. Stats. 1916, sections 8021, 8027], limits the liability of the owner of any vessel for damages or injuries which occur without his privity or knowledge to "the amount or value of the interest of such owner in such vessel, and her freight then pending."  But the federal statutes create no irreconcilable conflict with our own compensation act, since giving them full force it would result only that the accident commission would be in duty bound to limit its award so that it would not exceed the ascertained value of the interest of the owner, and our Workmen's Compensation Act will therefore be read as though the federal statutes were embodied in it.

We have not overlooked petitioner's argument based upon its construction of the decision of the United States supreme court in *The Osceola,* 189 U. S. 175, [47 L. Ed. 760, 23 Sup. Ct. Rep. 483], supported by the opinion of the district court in the case of *Schuede* v. *Zenith S. S. Co.,* 216 Fed. 566.  But we find ourselves unable to accept the broad view which petitioner takes of the meaning of the supreme court opinon in the Osceola case, and we are constrained to reach a conclusion different from that of the district court in the Schuede case.  Our endeavor has been to make fast to the safe anchorbuoys set out in its decisions by the supreme court of the

United States. If we shall have mistaken these and shall have made attachment to mere flotsam, then in truth we will have drifted with these litigants into chartless seas; but in this possibility we are consoled by the reflection that there is still at their call the safe pilotage of the supreme court of the United States to bring them to a secure haven.

The writ is discharged and the award appealed from is affirmed.

Lorigan, J., Shaw, J., Sloss, J., Melvin, J., Lawlor, J., and Angellotti, C. J., concurred.

Rehearing denied.