THE OREGON (JOSEPH et al., Interveners).

(District Court, D. Oregon. April 13, 1896.)

No. 2,486.

1. ADMIRALTY JURISDICTION—LIBEL FOR WRONGFUL DEATH—OREGON STATUTES.
   The Oregon statutes (section 371¹) give a right of action for wrongful death, when the deceased, if he had merely been injured, could have maintained an action. Section 3690 creates a lien on all vessels navigating the waters of the state for damages done by them to persons or property. *Held*, that the personal representatives of one wrongfully killed by a vessel have a lien on her for the damages, and may enforce the same in the federal courts. The Corsair, 12 Sup. Ct. 949, 145 U. S. 344, distinguished.

2. LIMITATION OF ACTIONS—COMMENCEMENT OF SUIT—LIBEL FOR COLLISION—INTERVENING PETITION FOR WRONGFUL DEATH.

After a vessel libeled for collision had been released on stipulation, the personal representative of a person killed in the collision filed an intervening petition to recover damages, under the Oregon statute. A recovery was had in the district court, but, on appeal, the supreme court held that the liability of the claimant on the stipulation could not be increased by the subsequent intervention of new claims, and that, when other libels are filed after the vessel's discharge, a new warrant of arrest must be issued, and the vessel again taken in custody. The court therefore reversed the decree, and remanded the cause for further proceedings, but without prejudice to the right of the court below to treat the intervening petition as an independent libel, and issue process thereon. By the Oregon statutes an action is deemed commenced as to each defendant when the complaint is filed and the summons is served on him, and an attempt to commence an action is deemed equivalent to the commencement thereof. *Held*, that the filing of the intervening petition without any attempt to arrest the vessel thereon was not the commencement of a suit against the vessel, so as to stop the running of the statute, and, the two-years limitation having expired before any attempt to issue process thereon, the claim was barred.

3. LACHES—EXCUSABLE DELAY—INTERVENTIONS IN ADMIRALTY.

Delay of interveners in a suit in rem in issuing process against the vessel, resulting from their erroneous belief that a stipulation under the original libel, on which the vessel had been released before the filing of their claims, was security for the payment thereof, will not be held as laches where the error was only disclosed by a decision of the supreme court, reversing a decision below in favor of the interveners.

C. E. S. Wood and Raleigh Stott, for libelants.

W. W. Cotton, for claimant.

BELLINGER, District Judge. In December, 1889, the steamship Oregon collided with the ship Clan Mackenzie. John Simpson, as master of the Mackenzie, and on behalf of that ship, began suit against the Oregon for damages resulting from the collision. The Oregon was thereupon arrested on process, and a monition to all persons interested was published. On January 2, 1890, the Oregon Short Line & Utah Northern Railway Company, as charterer of the Oregon for 99 years from January 1, 1887, filed a claim to the steamship, which was delivered to the claimant, on a stipulation in the sum of $250,000, to abide and perform the decree of the court. After the discharge of the steamship from arrest, libels of intervention were filed by Simpson in behalf of himself and wife for loss of personal effects, in which were joined some 18 of the crew having like claims, and by James Laidlaw, British vice consul at this port, as administrator of the estates of Charles Austin and Matthew Reed, whose deaths were caused by the collision, and by James Joseph, another of the crew of the Mackenzie, injured by the collision. Exceptions were taken by the claimant to these libels of intervention upon the ground that the discharge of the Oregon from arrest precluded the parties from proceeding by intervention in the original suit. As to the intervention of Laidlaw, the further objection was made that the right of action for the deaths of Austin and Reed did not survive to the administrator. These exceptions were overruled in the district court, and the claimant was ordered to pay

into court the sum of $35,531.19, to be applied first to the payment of the interveners' claims, and then to the payment of the claim of the original libel. On final appeal to the supreme court this decree, so far as it related to the interveners, was reversed. The court held that the liability of the claimant on its stipulation could not be increased by the intervention of new claims made after the stipulation was filed and the steamship discharged; that if, after a stipulation is given, and the vessel is discharged from custody, other libels are filed, a new warrant of arrest must be issued, and the vessel again taken into custody. The supreme court decreed as follows:

"The decree of the circuit court must therefore be reversed, with costs to the original libelants as against the steamship Oregon, and with costs to the Oregon as against the interveners, and the case remanded to the circuit court for further proceedings in conformity with this opinion; without prejudice, however, to the right of the court below, or of the district court, in its discretion, to treat the intervening petitions as independent libels, and to issue process thereon against the steamship Oregon, her owners or charterers, or to take such other proceedings thereon as justice may require." The Oregon, 158 U. S. 211, 15 Sup. Ct. 804.

In pursuance of the mandate of the supreme court on this order this court entered its order permitting the libels of intervention to stand as original libels from the date of their filing, and directing process to issue for the seizure of the Oregon. Exceptions are filed to the libels of intervention upon the ground that the claims made therein are stale, and are barred by the laches of each of said libelants; and that as to the claim of Laidlaw, administrator, the facts relied upon are not sufficient to entitle the administrator to the relief prayed for.

In support of Laidlaw's right to recover in this proceeding, as administrator, two sections of the Oregon statute are cited as follows:

"Sec. 371. When the death of a person is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action at law therefor against the latter, if the former might have maintained an action had he lived against the latter, for an injury done by the same act or omission."

"Sec. 3690. Every boat or vessel used in navigating the waters of this state * * * shall be liable and subject to a lien * * * for all * * * damages or injuries done to persons or property by such boat or vessel."

It was held, when the case was first in this court, that the lien given by section 3690 accompanied the right of action given by section 371 to the representatives of deceased persons. This part of the opinion of Judge Deady is confined to a mere statement of the right of lien in favor of the personal representatives of the deceased persons, which it is assumed necessarily follows from the statute creating liens in favor of persons injured by boats and vessels. The Oregon, 45 Fed. 77. In The Corsair, 145 U. S. 344, 12 Sup. Ct. 949, the court refers to this case as one where "a lien was given by the state statute, and was enforced in the admiralty." A similar reference is made to this decision in The City of Norwalk, 55 Fed. 109. In the case of The Premier, 59 Fed. 800, Judge Hanford held, under a statute like that of this state, upon the authority of the decision

of Judge Deady in this case "and the apparent approval thereof by the supreme court of the United States in the case of The Corsair," that the rights conferred by these statutes are available to the representatives of deceased persons. The case was afterwards affirmed in the circuit court of appeals. The Willamette, 18 C. C. A. 366, 70 Fed. 874.

It is claimed that the decision thus made in this case is not conclusive of this question, since the decree as to the interveners was reversed in the supreme court. It is also contended that the principle of the decision in the case of The Corsair is against the right of the representatives of deceased persons to avail themselves of the lien of the statute. In that case the court says:

"As we are to look, then, to the local law in this instance for the right to take cognizance of this class of cases, we are bound to inquire whether the local law gives a lien upon the offending thing. * * * The Louisiana act declares, in substance, that the right of action for every act of negligence which causes damage to another shall survive, in case of death, in favor of the minor children or widow of the deceased; and, in default of these, in favor of the surviving father and mother, and that such survivors may also recover the damages sustained by them by the death of the parent, child, husband or wife. Evidently nothing more is here contemplated than an ordinary action according to the course of the law as it is administered in Louisiana. There is no intimation of a lien or privilege upon the offending thing, which, as we have already held, is necessary to give a court of admiralty jurisdiction to proceed in rem."

The court cites at some length several cases under the English acts, among them the case of Seward v. The Vera Cruz, 10 App. Cas. 59–73, and it says that:

"While these cases turn upon the construction of the English acts, the courts have been guided in such construction by principles which are of general application both in this country and in England."

These cases arose under what is known as "Lord Campbell's Act," (9 & 10 Vict. c. 93), which is "An act for compensating the families of persons killed by accident." The Oregon statute in question (section 371) is derived from Lord Campbell's act, and is substantially like it. By the English admiralty court act of 1861, jurisdiction was given to the high court of admiralty over "any claim for damage done by any ship," and it was provided that this jurisdiction might be exercised either by proceedings in rem or by proceedings in personam. The question arose whether this right to proceed in rem under the admiralty act was available to the representatives of deceased persons under the act (Lord Campbell's act), which allowed such representatives to maintain an action for injuries resulting in death, where the deceased might have maintained such action had he survived. It was held that Lord Campbell's act was for the general case, and not for particular injury by ships, and that this pointed to a common-law action, to a personal liability, and was absolutely at variance with the notion of a proceeding in rem. It is contended for The Oregon that, if the right to proceed in rem under the admiralty act was not within the act which gave a right of action to the representatives of deceased persons, the right to proceed in rem to enforce the lien of section 3690, upon the same prin-

ciple is not within section 371. The answer to this is that there is no general rule of the maritime law that attaches a lien to personal torts; that a right to proceed in rem does not necessarily involve the existence of a lien in the sense in which we now understand it, but was originally only a means of compelling an appearance. The City of Norwalk, 55 Fed. 111. The refusal, therefore, of the supreme court to recognize a right to proceed in rem in favor of the representatives of deceased persons under a statute like ours does not decide against the right to enforce a statutory lien; on the contrary, such right is expressly declared to exist. The Oregon statute, unlike that of Louisiana, does not provide that causes of damage to another shall survive in case of death. It is substantially like Lord Campbell's act; and in the case of Seward v. The Vera Cruz, supra, the view held was (Lord Blackburn concurring), not that the cause of action survived, but that "a totally new action is given against the person who would have been responsible to the deceased if the deceased had lived; an action which, as is pointed out in Pym v. Railway Co. [4 Best & S. 396], is new in its species, new in its quality, new in its principle, in every way new, and which can only be brought if there is any person answering the description of the widow, parent, or child, who, under such circumstances, suffers pecuniary loss by the death." In the case of Pym v. Railway Co., cited in the foregoing quotation, it was argued in behalf of the defendant that the action maintainable under Lord Campbell's act by the personal representatives of a deceased person is "a mere continuance of that which would have accrued to the deceased if he had lived; but Erle, C. J., said: "The statute, as appears to me, gives to the personal representatives a cause of action beyond that which the deceased would have if he had survived, and based on different principles." 4 Best & S. 403. And so in The City of Norwalk the court considers the right "a new right," which is "none the less maritime because based upon state legislation, where the subject-matter is maritime." The fact that the right is new, and therefore does not include the right to proceed in admiralty in rem, does not affect the transaction which the statute has made the foundation of the right, and which is maritime in its character, since it grows out of the faults of navigation upon the navigable waters of the United States. The lien of the statute is enforced as an incident of the transaction upon which the new right of action thus created is based.

The state statute which gives to the representatives of deceased persons a right of action provides that such action shall be commenced within two years after the death, and this limitation is held to operate as a limitation of the liability itself as created, and not of the remedy alone (The Harrisburg, 119 U. S. 199, 7 Sup. Ct. 140); and it is therefore to be distinguished from the limitation by a state statute of the remedy in a matter of which, owing to its maritime character, admiralty has jurisdiction. It is contended for the intervention of Laidlaw that the filing of his libel of intervention within two years was the commencement of an action within the mean-

ing of the statute. The statute of Oregon provides that "an action shall be deemed commenced as to each defendant when the complaint is filed and the summons is served on him, and that an attempt to commence an action shall be deemed equivalent to the commencement thereof, when the complaint is filed and the summons delivered with the intent that it shall be actually served, to the sheriff," etc.[1] In this case there was no attempt to serve process upon the Oregon, and no intent to proceed against her can be inferred from what took place. On the contrary, the object of the intervention appears to have been to recover from the sureties in the stipulation given before the intervention was filed for the release of the ship from the seizure made under the original libel. No new warrant of arrest was issued upon the petitions of intervention. The claim against the sureties was prosecuted until the supreme court decided adversely to it in 1895. These petitions do not constitute the commencement of actions against the Oregon, allowing them the character of independent libels. Knowlton v. Watertown, 130 U. S. 327, 9 Sup. Ct. 539, 542. The filing of libels is not enough. There must be, in the case of a ship, a warrant of arrest served, or, if not served, at least attempted to be served. The intent to proceed against the particular defendant must be thus shown. From 1890 to 1895 the interveners prosecuted their claims as claims for which the sureties in the stipulation were liable, and they had a decree in the district court to that effect. Upon the reversal of that decree in the supreme court, they shifted their position, and for the first time sought to reach the steamship by proceeding in rem. Upon their petition to this end the order was made in the supreme court under which this court was allowed in its discretion to treat the petitions of intervention as independent libels, and to issue process thereon against the Oregon. The object of this was to avoid the bar of the statute. Now if, without this order, the statute had run, the order was ineffective for the purpose intended. The court cannot relieve a party from the bar of the statute, nor impair rights which have vested under it. If the order of the court was necessary to give to the petitions of intervention the effect of proceedings that would interrupt the running of the statute, such effect could only operate from the date of the order; and it is conceded that without the order the court had no jurisdiction to entertain the intervening petitions. So that, in either view of the question, the proceeding, so far as Laidlaw is concerned, is barred.

As to the other interveners, no such fixed and arbitrary period of time in bar of their right is established; and while courts of equity, as a general rule, in determining the question of laches, proceed upon the analogy of statutes of limitation, yet the court will always adopt a shorter or longer time, if the circumstances of the particular case require it. The delay that has taken place in the prosecution of these claims is due to the erroneous belief of the interveners that the stipulation filed by the claimant for the release of

[1] Hill's Am. Laws, §§ 14, 15.

the Oregon upon the original libel to recover for the loss of the Clan Mackenzie was security for any claim that might be filed against such vessel up to the amount of the stipulation, and so Judge Deady of this court held. The prosecution of these claims against the owners of the vessel, however ineffective for other purposes, was sufficient to advise such owners that the interveners asserted these claims, and relieves the interveners of any imputation of laches. It is not every delay, but unreasonable delay, from which such an imputation arises. The grounds of laches are equitable. It is only when there has been such delay as is inconsistent with good faith, or as operates to the injury of the party proceeded against, that the bar of laches is allowed; and that is not this case.

It is argued that if the interveners had caused the arrest of the Oregon at the time of the interventions the lessee company would have provided security for the claims, and that, such lessee having in the meantime become insolvent, the owners of the Oregon are prejudiced by the fact that such security was not given. But this result is in no way attributable to the delay that has taken place. The owners were at all times advised of the liability of the leased property for damages of this character. If they did not secure themselves against it, they might have done so. The nature of the claims was made clear in the proceedings had upon the interventions. They knew that such claims were being prosecuted in good faith, and were enforceable against the Oregon in a proper proceeding; and the circumstances were such as to advise them that such a proceeding would be resorted to if the decision should be in favor of the sureties on the stipulation under which the ship was released.

The exceptions are sustained as to the intervention of Laidlaw and overruled as to the other interveners.

