## THE GENERAL FOY.

(District Court, D. Oregon. January 10, 1910.)

No. 5,067.

ADMIRALTY (§ 28\*)—JURISDICTION IN REM—SUIT FOR WRONGFUL DEATH.

B. & C. Comp. Or. § 381, which gives a right of action for wrongful death to the personal representative of the decedent, in connection with section 5706, subd. 4, providing that vessels shall be subject to a lien for all demands for damages for injuries done to persons or property, is effective to give a court of admiralty jurisdiction to entertain a libel in rem against a vessel by the representative of a deceased person to recover damages for his death through the improper navigation of such vessel.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. § 285; Dec. Dig. § 28.\*

Jurisdiction of torts, see note to Campbell v. H. Hackfeld & Co., 62 C. C. A. 279.]

In Admiralty. Suit by Jennie Williams, administratrix, against the General Foy. On exceptions to libel. Exceptions overruled.

Thomas O'Day and John Manning, for libelant.
William C. Bristol, for respondent and claimant.

WOLVERTON, District Judge. Robert H. Williams, while employed on the ship General Foy and engaged in removing ballast from the hold thereof, was killed by reason of an alleged defective condition of the cable used in raising such ballast in the process of unloading the same, attributed to the negligence of the ship. The administratrix of the deceased has brought her libel to recover damages on account of his death. The respondent has filed numerous exceptions to the libel. Upon the presentation of the cause, however, upon the exceptions, but one question was insisted upon, namely, that the libelant is without cause of libel, because no lien exists against the ship for damages arising on account of death, and therefore that no action in rem lies. The question was recently determined by this court adversely to the contention. The Aurora (D. C.) 163 Fed. 633. Notwithstanding, it has been deemed essential, owing to its importance, that it be again presented. This has been done ably and exhaustively by counsel upon both sides.

It is settled beyond question, by the uniform course of decisions everywhere, that under the common law, without statutory enactment, an action in damages will not lie on account of the death of a human being. See Insurance Co. v. Brame, 95 U. S. 754, 24 L. Ed. 580, and cases there cited. Accordingly it has also become settled law that no action lies in maritime law, in the absence of an act of Congress or a state statute giving the right, to recover damages for such a death arising from negligence. The Harrisburg, 119 U. S. 199, 7 Sup. Ct. 140, 30 L. Ed. 358.

It was the purpose of what is known as "Lord Campbell's Act" to provide relief against this condition. That act gives a civil remedy to the personal representatives of one whose death is caused by the

wrongful act or omission of another, for the benefit of the widow, husband, parent, or child of such person. The act is commonly held not to be a survival statute, but the granting of a new right of action wholly unknown in previous law. In pursuance thereof an action in personam will lie, under the English admiralty practice, based upon negligence resulting in death. The Bernina, 11 Prob. Div. 31, on appeal to the Court of Appeal 12 Prob. Div. 58, and on appeal to the House of Lords 13 App. Cas. 1.

A statute of similar import to Lord Campbell's act has been enacted in Oregon, which confers a right of action upon the personal representatives of the decedent for death caused by the wrongful act or omission of another. Sec. 381. This statute, also, like Lord Campbell's act, is not survival in character, but gives an entirely new right of action; but the recovery is for the benefit of the estate of decedent, and not in particular for the benefit of the widow, husband, or child of such person. Perham v. Portland Electric Co., 33 Or. 451, 53 Pac. 14, 24, 40 L. R. A. 799, 72 Am. St. Rep. 730; Schleiger v. Northern Terminal Co., 43 Or. 4, 72 Pac. 324. This statute is also effective to give a right of action in personam in admiralty for death occasioned by negligence. The law, it is true, does not extend jurisdiction to a federal court, nor does it purport to do so; but it gives "a substantial right of such a character that, where there is no impediment arising from the residence of the parties, the right may be enforced in the proper federal tribunal, whether it be a court of equity, of admiralty, or of common law." Ex parte McNiel, 13 Wall. 236, 243, 20 L. Ed. 624.

I do not understand this proposition to be controverted. In addition to Lord Campbell's act, jurisdiction was given to the High Court of Admiralty over "any claim for damage done by any ship," under Admiralty Court Act 1861, § 7, which jurisdiction, it was further enacted by section 35, "may be exercised either by proceedings in rem or by proceedings in personam." It has been held, however, that the combined authority of these acts was not effective to confer the right of action in rem against a ship occasioning death through negligence. The Vera Cruz, 10 App. Cas. 59, 65, 66, 67, 73. The case, as is to be gathered from the opinion of Lord Chancellor Selborne, turned upon the construction of the Admiralty Court act, and whether it, being the later act, was to be read by implication into Lord Campbell's act, so as to give such a remedy in rem in admiralty against the ship. After considering first the provisions of the Admiralty Court act and then those of Lord Campbell's, and concluding with reference to the latter that it constituted enactment of "legislation for the general case, and not for particular injury by ships, points to a common-law action, points to a personal liability and a personal right to recover, and is absolutely at variance with the notion of a proceeding in rem," the learned Lord Chancellor finally concludes as to both in the following language:

"To me it seems to be not only easy but right to construe the words in the act of 1861 in a sense in which they are quite inapplicable to this particular cause of action, and leave all the provisions of Lord Campbell's act in full force and effect, not modified or interfered with; because in truth damage

done by any ship' was a form of expression naturally applicable to that description of damage, maritime damage, as to which, in cases falling within the jurisdiction of the Admiralty Court, the ship was treated as, so to say, in delicto, and was liable to a proceeding in rem, such as the thirty-fifth section contemplated."

So, to summarize, it was determined that the Admiralty Court act, extending to the Court of Admiralty "jurisdiction over any claim for damage done ·by any ship," did not give jurisdiction to entertain an action in rem for damages for loss of life under Lord Campbell's act. Relative to Lord Campbell's act it was further said that:

"It is an act which deals with a category of cases, which may include injuries done by persons responsible for the navigation of ships to persons suffering by faults in that navigation; but it only includes them as part of a much larger and more general category of cases, and without any express reference to or mention of any particular case which may fall under that category. Therefore no one can say that Lord Campbell's act relates expressly to claims for damage done by ships; and this section in the act of 1861 relates to that and to nothing else. Maritime damage by ships is the subject of that legislation; general injuries, resulting in loss of life by wrongful acts and so forth, are the subject of the other."

Thus it was practically declared, and such is the law, that a libel in personam lies for such damage as was there and is here sought to be recovered.

Following this case, the Supreme Court of the United States, in the case of The Corsair, 145 U. S. 335, 12 Sup. Ct. 949, 36 L. Ed. 727, having under consideration an act of the state of Louisiana declaring that the right of action for every act of negligence which causes damage to another shall survive, in case of death, in favor of the minor children or widow of the deceased, and, in default of these, in favor of the surviving father and mother, and that such survivors may also recover the damages sustained by them by the death of the parent, child, husband, or wife, held that nothing more was within the intendment of the statute than an ordinary action according to the course of law as administered in Louisiana, and that, there being not the semblance of any provision for a lien or privilege of any kind upon the ship or the offending thing, the act was clearly not effective to give a court of admiralty jurisdiction to entertain a libel in rem. It was further said in this case that:

"A maritime lien is said by writers upon maritime law to be the foundation of every proceeding in rem in the admiralty. In much the larger class of cases the lien is given by the general admiralty law; but in other instances, such, for example, as insurance, pilotage, wharfage, and materials furnished in the home port of the vessel, the lien is given, if at all, by the local law. As we are to look, then, to the local law in this instance for the right to take cognizance of this class of cases, we are bound to inquire whether the local law gives a lien upon the offending thing. If it merely gives a right of action in personam for a cause of action of a maritime nature, the District Court may administer the law by proceedings in personam, as was done with a claim for half pilotage dues under the law of New York, in the case of Ex parte McNiel, 13 Wall. 236 [20 L. Ed. 624]; but, unless a lien be given by the local law, there is no lien to enforce by proceedings in rem in the court of admiralty."

In a later case (The Albert Dumois, 177 U. S. 240, 20 Sup. Ct. 595, 44 L. Ed. 751) the Supreme Court had occasion to consider, along with

the survival act, article 3237 of the Civil Code of Louisiana, which provides as follows:

"Where any loss or damage has been caused to the person or property of any individual by any carelessness, neglect or want of skill in the direction or management of any steamboat, barge, flatboat, water craft or raft, the party injured shall have a privilege to rank after the privileges above specified"

—and held that the object of such article "was not to extend the cases in which damages might be recovered to such as resulted in death, but merely to provide that, in cases of damages to person or property, where such damage was occasioned by negligence in the management of any water craft, the party injured should have a privilege or lien upon such craft," and that it "was not intended to apply to cases brought by the representatives of a deceased person for damages resulting in death." That is to say, the statute gave a lien or privilege for damages resulting to persons and property by the negligent management of a water craft, but did not extend that lien or privilege to cases involving the loss of life in favor of the representatives of the deceased person.

The question involved came up later in the Circuit Court of Appeals, Seventh Circuit, in The Onoko, 107 Fed. 984, 47 C. C. A. 111, under a statute very similar to Lord Campbell's act read in connection with the water craft acts of Illinois and Wisconsin, which provided, in effect, that every vessel, steamboat, etc., and other water craft "shall be subject to a lien thereon * *' * for all damages arising from injuries done to persons or property by such water craft * * * where the same shall have occurred through the negligence or misconduct of the owner, agent, master, or employé thereon." This is the language of the Illinois statute with reference to the lien. That of the Wisconsin statute is:

"For all damages arising from injuries done to persons or property by such ship, boat or vessel."

In passing upon these acts, the court, speaking through Jenkins, Circuit Judge, says:

"It is an action growing out of the relationship to one whose life has been destroyed through negligent injury, and the recovery is for the loss sustained by his death, the direct pecuniary loss resulting to the survivors arising from their dependence upon that life, and not because of injuries suffered by the decedent. It is also to be noted that the acts impose liability upon 'the person who, or company or corporation which, would have been liable if death had not ensued,' manifestly contemplating a personal action against the individual or corporation guilty of the negligent act causing death. It is also to be said that the water craft law contemplates a lien for direct injuries done by the inanimate thing negligently navigated, and would not seem to comprehend such injury as is contemplated by the act granting a right of action for a death. The injury for which a lien is given is a direct injury by the negligently navigated craft to person or property. By reason of the faulty navigation and consequent collision no injury was done to the person of the libelant, or to the persons of those he represents. Nor was injury done to his or their property. They had no property right in the person of the deceased. The right of action arose only upon and because of his death. The recovery is allowed as compensation for the supposed support and education which they would have received had he survived. This right of action, arising only upon death, cannot, within the meaning of the water craft law, be property which could be injured by an inanimate thing negligently navigated."

175 F.—38

The question came up again in the Court of Appeals for this circuit in The Dauntless, 129 Fed. 715, 64 C. C. A. 243, wherein was considered the California survival statute, being similar to Lord Campbell's act, together with the boat lien act, and the holding in The Albert Dumois and The Onoko was followed. The court previously held, however, in two cases, that an action of the character in rem could be maintained under the Oregon statutes. The Willamette, 70 Fed. 874, 18 C. C. A. 366, 31 L. R. A. 715; Laidlaw v. Oregon Ry. & Nav. Co., 81 Fed. 876, 879, 26 C. C. A. 665. These cases are referred to in the opinion by Hawley, District Judge, rendered in The Dauntless. They are neither distinguished nor specifically overruled, and it does not seem to me that it was the purpose of the court to disturb their authority.

The question was first directly decided in this district by Judge Deady, in the case of The Oregon, 45 Fed. 62. In that case James Laidlaw, the British vice consul, intervened as administrator of the estates of Charles Austin and Matthew Reid, persons who lost their lives by reason of a collision occasioned by the Oregon, and it was held that the administrator was entitled to recover by a proceeding in rem. The cause was appealed to the Supreme Court, and reversed, but not upon the ground that the administrator could not sue in rem, although the question was in the case. The District Court adjudged both colliding vessels to be in fault, and decreed a division of damages, and, further, that the intervening claimants were entitled to recover against the obligors in the stipulation for a release of the Oregon, although their intervention was of later date than the stipulation and the release of the ship. The Supreme Court decided that the District Court was in error in both these respects. The court, however, specifically decreed (158 U. S. 211, 15 Sup. Ct. 804, 39 L. Ed. 943), that the cause be "reversed, * * * without prejudice, however, to the right of the court below, or of the District Court, in its discretion, to treat the intervening petitions as independent libels, and to issue process thereon against the steamship Oregon, her owners, or charterers, or to take such other proceedings therein as justice may require."

It is to be remembered that James Laidlaw, as administrator, was one of the intervening petitioners. In pursuance of the mandate of the Supreme Court, this court entered an order permitting the libels of intervention to stand as original libels from the date of filing, and directing process to issue for the seizure of the Oregon; Laidlaw being one of the interveners. The question was thereupon again presented, before Judge Bellinger, as it was before Judge Deady, whether a libel in rem would lie in favor of the administrator, and it was again determined that it would. This was upon exceptions to the libel of intervention. But it was further held that the filing of the intervening petition, without any attempt to arrest the ship, was not the commencement of a suit against the vessel so as to stop the running of the statute, and, the two-year limit having expired before any attempt was made to issue process therein, the claim was barred, and thus Laidlaw's claim in behalf of the estates of the decedents was defeated. The Oregon (D. C.) 73 Fed. 846. Upon this latter holding

the case was again reversed by the Circuit Court of Appeals (Laidlaw v. Oregon Ry. & Nav. Co., 81 Fed. 876, 26 C. C. A. 665), and, being remanded, Laidlaw finally recovered upon his intervening libel as administrator of the estates of his decedents. The Oregon (D. C.) 89 Fed. 520. Such is the history of the long contest by the interveners, resulting favorably to the representative of the decedents' estates.

In the meantime Judge Hanford held, in the case of The Willamette (D. C.) 59 Fed. 797, following the doctrine announced by Judge Deady in the Oregon (D. C.) 45 Fed. 62, under the Washington statutes, which are very like those of Oregon upon the subject, that a libel in rem lay to recover in favor of the representative of a deceased person whose death was the result of the improper navigation of the ship. This case was appealed, and, after deliberate judgment, was affirmed by the Circuit Court of Appeals. The Willamette, supra. So again it was held by that court, in the appeal of The Oregon, upon reciting the statutes of the state, that the Admiralty Court was possessed of jurisdiction in rem to award relief to the decedents' personal representative. Laidlaw v. Oregon Ry. & Nav. Co., supra, being the case cited in the opinion of the court in The Dauntless. So that there is here a determination by the Circuit Court of Appeals of the very point in controversy, standing wholly unreversed. And why is it not binding upon this court? I see no reason for holding to the contrary. It must be conceded that there is but small distinction to be drawn between the Oregon boat lien statute and those obtaining in California, Illinois, and Wisconsin—perhaps none that would differentiate the statutes in principle. The matter which differentiates this case from The Albert Dumois goes further back. The English case concedes that Lord Campbell's act gives a right of action in personam in admiralty for damages arising from negligence resulting in the death of a human being. All it lacked, therefore, was a statute giving a lien upon the water craft to accord jurisdiction to admiralty to entertain the action in rem. But the Admiralty Court act did not attempt to confer a lien. What the act did was to give the Admiralty Court "jurisdiction over any claim for damage done by any ship," and to declare that such jurisdiction "may be exercised either by proceedings in rem or by proceedings in personam," and the statute was construed to comprise such actions arising in delicto as the Admiralty Court previously took cognizance of by proceedings in rem; that is, that the statute granted no new cause, but gave legislative sanction only to an old right, and, therefore, that it was not the purpose of the statute to give a right of action in rem against the offending vessel for damages arising on the occasion of the death of an individual. Of course, it was said that Lord Campbell's act gave a right of action against the person and not against an inanimate thing, and within itself did not authorize a proceeding in rem. But it did give a right of action not limited to the person of the injured party, because the person, being dead, could claim no reparation in an earthly court. It gave a right of action to certain relatives of the deceased for damages arising by reason of his death; the statute being a recognition that the relatives were damaged by reason of such an event, if caused by

the wrongful act of another. From the specific reading of the lien or privilege statute involved in The Albert Dumois Case, the reasonable construction thereof was that it gave a right only to the party injured—the language being:

"Where any loss or damage has been caused to the person or property of any individual * * * the party injured shall have a privilege."

Not so with the Illinois, Wisconsin, California, and Oregon statutes, for in each instance it is declared, in effect, that every vessel shall be subject to a lien for all damages arising for injury done to persons or property by such boat or vessel. Statutes more general and comprehensive in terms could hardly have been framed, and they would seem sufficient to comprise such damages as the heirs of the decedent would suffer by reason of such decedent having been wrongfully cut short of his existence. But, however this may be, I feel bound by the decisions of the Circuit Court of Appeals in the cases of The Willamette and The Oregon, supra, standing, as I construe the decision in The Dauntless, unreversed or in any way modified.

These considerations lead to an adherence to the decision in The Aurora (D. C.) 163 Fed. 633, and the exceptions of respondent to the libel will therefore be overruled.