AURORA SHIPPING CO. v. BOYCE.

(Circuit Court of Appeals, Ninth Circuit. October 23, 1911.)

No. 1,893.

1. SHIPPING (§§ 79, 87*)—ADMIRALTY (§ 28*)—JURISDICTION—SUIT IN REM FOR MARITIME TORT—OREGON STATUTE.

B. & C. Comp. Or. § 381, giving a right of action for wrongful death, together with section 5706, which provides that "every boat or vessel used in navigating the waters of this state * * * shall be liable and subject to a lien * * * for damages or injuries done to persons or property by such boat or vessel," and section 5708, which provides that "any person having a demand as aforesaid instead of proceeding against the master, owner, agent or consignee of the boat or vessel may at his option commence an action against such boat or vessel by name," create a statutory right of action and a statutory lien on a vessel where the injury causing death happens on board such vessel within the state by reason of the fault or negligence of its officers, although the vessel was afloat on navigable waters and subject to the admiralty jurisdiction, and the injury constitutes a maritime tort, and such right of action and lien may be enforced by a suit in rem in a court of admiralty.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. §§ 79, 87;* Admiralty, Dec. Dig. § 28.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. ADMIRALTY (§ 18\*)—JURISDICTION—ATTEMPTED LIMITATION BY STATE STATUTE.**

A state Legislature, while it may create a right of action for a maritime tort and a lien therefor, has no power to invest a court of the state with exclusive jurisdiction of suits in rem against vessels to enforce such right and lien.

[Ed. Note.—For other cases, see Admiralty, Dec. Dig. § 18.\*

Admiralty jurisdiction of torts, see note to Campbell v. H. Hackfeld & Co., 62 C. C. A. 279.]

**3. SHIPPING (§ 87\*)—OREGON STATUTE GIVING LIENS FOR TORTS—CONSTRUCTION.**

B. & C. Comp. Or. § 5706, providing that boats and vessels shall be subject to a lien for damages or injuries done to persons or property, is not limited in its scope to such personal injuries only as do not result in death, but includes as well injuries causing death, which create a right of action under another statute and which are as much within the terms and reason of the statute as the other class.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 87.\*]

**4. COURTS (§ 259\*)—JURISDICTION OF FEDERAL COURTS—ENLARGEMENT OF REMEDIES BY STATE LEGISLATION.**

State laws cannot diminish the constitutional jurisdiction of the federal courts, nor add to nor take from laws enacted by Congress relating to subjects within the legislative power vested in Congress by the Constitution, but they may create new rights relating to such subjects enforceable in the federal courts so long as congressional authority remains dormant by reason of failure to enact any statute relating to the same subject.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 795, 796; Dec. Dig. § 259.\*]

**5. ADMIRALTY (§§ 18, 28\*)—JURISDICTION IN REM.**

The power of admiralty to adjudicate comprehends every variety of maritime torts which may be the foundation of a legal claim for compensation, and in all such cases a suit in rem affords the appropriate remedy. The admiralty rules providing for specific cases are not restrictive of instances which give rise to proceedings in rem, except as therein expressly prescribed.

[Ed. Note.—For other cases, see Admiralty, Dec. Dig. §§ 18, 28.\*]

Appeal from the District Court of the United States for the District of Oregon.

Suit in admiralty by Maggie Boyce, administratrix of the estate of William Boyce, deceased, against the barkentine Aurora; the Aurora Shipping Company, claimant. Decree for libelant (178 Fed. 587), and claimant appeals. Affirmed.

The appeal in this case brings for review a decision (178 Fed. 587) of the District Court for Oregon, in favor of the libelant in a suit in rem, brought by her in the capacity of administratrix of the estate of her deceased husband, to recover damages for his death, alleged to have been caused by negligence. The vessel libeled is a barkentine hailing from the port of San Francisco and owned by a corporation of the state of California. The place of the accident and death is in the state of Oregon; the vessel being at the time moored to a wharf receiving a cargo of lumber. The deceased was employed as a longshoreman to assist in loading the vessel, and, in returning to his working place after luncheon, he was required to walk upon a plank 12 inches wide, the inboard end of which rested upon the mizzen rigging, without lashing or other means to prevent it from being displaced. He was killed by falling upon the deck, and the amended libel charges that he lost his balance and fell because of the narrowness and the loose, moving, and

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

slippery condition of the plank, and the lack of any guard rail or safety ropes. The equipment of the vessel included a properly constructed gangplank suitable for use as means for safe ingress and egress to and from the vessel. Therefore the vessel was not in fault by reason of failure of her owner to supply a gangplank which could have been used in going from the wharf to the vessel without incurring unnecessary risk of injury, but the substitution of an unsuitable plank was wrongful on the part of the officers in charge of the ship's business, and was the efficient cause of the decedent's death. There appears to be no sufficient ground for questioning the decision of the district judge with respect to the facts of the case. In maintaining the jurisdiction of the court and the libelant's right to a remedy by a suit in rem, the decision follows the case of The Oregon (D. C.) 45 Fed. 62, in which Judge Deady rendered a decree in a suit in rem, awarding damages to the personal representatives of deceased seamen for a maritime tort resulting in death, basing his decision upon provisions of the statutes of Oregon, cited in this case as "sections 381, 5706, and 5708 of Bellinger and Cotton's Code." Section 381 confers upon personal representatives of a person, whose death has been caused by a wrongful act or omission of another, the right to maintain an action therefor, at law, against the wrongdoer, if the deceased might have maintained an action, had he lived, for an injury done by the same act or omission. The relevant clauses of section 5706 and section 5708 read as follows:

"Sec. 5706. Every boat or vessel used in navigating the waters of this state or constructed in this state shall be liable and subject to a lien * * * for damages or injuries done to persons or property by such boat or vessel."

"Sec. 5708. Any person having a demand as aforesaid, instead of proceeding for the recovery thereof against the master, owner, agent or consignee of the boat or vessel, may, at his option, commence an action against such boat or vessel by name."

Section 5709 prescribes that an action against a boat or vessel shall be brought in a designated state court for the county in which the boat or vessel may be found. The brief submitted in behalf of the appellant summarizes its contentions in six articulated propositions, which, in substance and meaning, are as follows:

First. Under section 5709 an action against a boat or vessel to enforce the statutory lien is required to be brought in a circuit court of the state of Oregon; and the statute must be strictly construed.

Second. The statutory lien is for an *injury* to a person or property, and it is not applicable to cases of injuries causing death.

Third. State statutes cannot extend the jurisdiction of the admiralty courts.

Fourth. Admiralty courts have jurisdiction of suits in rem, for injuries in collision cases, because a suit in rem is authorized by admiralty rule 15 (29 Sup. Ct. xl); and have jurisdiction in proceedings for limitation of liability, because in those cases the law authorizes courts of admiralty to acquire exclusive jurisdiction to adjudicate all controversies respecting claims for damages which may be asserted against funds surrendered to their custody.

Fifth. At common law all actions for death die with the person, and the right of a representative of a deceased person to maintain an action for his death in Oregon is statutory, and the statute which creates the right does not purport to create a lien.

Sixth. This court has decided, in the case of The Dauntless, 129 Fed. 715, 64 C. C. A. 243, that an action in rem, for the death of a person based upon the California statutes, cannot be maintained; and there is practically no difference between the statutes of California and Oregon.

Wilbur & Spencer and F. P. Deering, for appellant.

Giltner & Sewall, for appellee.

W. C. Bristol, amicus curiæ.

Before GILBERT and ROSS, Circuit Judges, and HANFORD, District Judge.

HANFORD, District Judge (after stating the facts as above). [1] For the determination of this case, one main question must be decided, viz.: Did the District Court have jurisdiction to render its decree in favor of the libelant for the cause alleged in her libel? This main question can be treated most advantageously by dividing it into two parts. The subsidiary questions are:

(a) Is there a statutory right to maintain an administrator's suit to recover damages for the death of a person resulting from a tortious injury within the state of Oregon, and a statutory lien upon a vessel subject to admiralty jurisdiction, where the injury causing the death happens on board of such vessel afloat upon navigable water, and constitutes a maritime tort by reason of culpability of the ship's officers?

(b) Is the admiralty jurisdiction of a United States District Court adequate to adjudicate the rights of the parties, founded upon a maritime tort causing death and state statutes conferring a right of action therefor and creating a lien upon the offending vessel?

The answers to the appellant's contentions, above stated, will also furnish the reasons deemed sufficient for an affirmative decision of these main and subsidiary questions.

[2] The first proposition is untrue, because there is involved in it an unwarranted assumption of power in the Legislature of Oregon to invest the courts of that state with exclusive jurisdiction of suits in rem against vessels to enforce liens for maritime torts. That assumption has to support it the plausible theory that legislative power sufficient to create a new right must be potent to limit the right by imposing a condition. That theory, however, as applied to encroachments upon the jurisdiction of the national courts, is completely refuted by the decisions of the Supreme Court in the cases of The J. E. Rumbell, 148 U. S. 1, 13 Sup. Ct. 498, 37 L. Ed. 345, and The Glide, 167 U. S. 606, 17 Sup. Ct. 930, 42 L. Ed. 296. Section 5709 is merely an appendage of the preceding section, and its unconstitutionality does not taint section 5706, which creates the lien.

[3] The second proposition seems to aim at a separation of injuries causing death from other personal injuries which only inflict pain or partially disable an individual. To classify torts, and then apply the statute to one class and make exceptions as to others, would require an unwarranted usurpation of legislative authority, because it would effect a material change in the statute, eliminating therefrom rights comprehended within it, according to the common and general definition of the words and phrases selected by the Legislature. Instead of a construction restricting their application to classes, general laws are to have general application so as to operate equally and uniformly. To give this law a fair and reasonable construction, it is necessary to presume that the Legislature intended to prescribe a rule consonant with justice. When a man is wounded or killed, the pain which he suffers and his individual loss are not the only pains and losses inflicted, for the indirect consequences to those dependent upon him are often the most distressing. In such cases justice requires that compensation be rendered to the injured, and there can be no fair rule of compensation which excludes from its benefits the dependent wife

and children who have been robbed of their means of support by the death of a husband and father.

In the case of The Oregon (D. C.) 45 Fed. 62, Judge Deady sustained intervening libels in rem of an administrator of two seamen who were killed in a collision. The provisions of the Oregon statutes, which we have to consider, were quoted in his opinion. On an appeal to the Circuit Court for the District of Oregon, his decision was affirmed, and the case has been cited approvingly by Judge Brown of New York in the case of The City of Norwalk (D. C.) 55 Fed. 98, approved by this court in the case of The Willamette, 70 Fed. 874, 18 C. C. A. 366, 31 L. R. A. 715. The Supreme Court, in The Corsair, 145 U. S. 335, 12 Sup. Ct. 949, 36 L. Ed. 727, mentions it in these words: "In The Oregon [D. C.] 45 Fed. 62, a lien was given by the state statute and was enforced in the admiralty." Afterwards the case was reversed by the Supreme Court, on the ground that the decree for damages against sureties and in favor of parties who intervened after the release of the vessel was erroneous; but the question as to the right of the administrator to sue in rem appears to have been passed over without discussing it. The order which the Supreme Court made, however, was that the decree be reversed with costs "as against the interveners, and the case remanded to the Circuit Court, * * * without prejudice, however, to the right of the court below, or of the District Court, in its discretion to treat the intervening petitions as independent libels, and to issue process thereon *against the steamship Oregon,* her owners or charterers, or to take such other proceedings therein as justice may require." 158 U. S. 186, 15 Sup. Ct. 804, 39 L. Ed. 943. Thereafter, in the District Court, Judge Bellinger decided that the right of the administrator to continue the litigation was barred by the Oregon statute of limitations. The Oregon (D. C.) 73 Fed. 846. His decision was reversed by this court and an opinion was rendered in which, following a quotation of the Oregon statutes and citation of The Willamette Case, the court stated the following conclusion:

"The local law thus giving a lien upon the offending thing for such damages as are here involved, it is the settled law that the aggrieved party may proceed in rem in the proper court of admiralty." Laidlaw v. Oregon Ry. & Nav. Co., 81 Fed. 876, 26 C. C. A. 665.

The case was finally terminated by a decree awarding damages to the several intervening libelants, including the administrator of the estates of the seamen who were killed. The Oregon (D. C.) 89 Fed. 520; The General Foy (D. C.) 175 Fed. 590.

The main supports of the appellant's arguments are the decisions of the Supreme Court in the case of The Albert Dumois, 177 U. S. 257, 20 Sup. Ct. 602, 44 L. Ed. 751, which denied the applicability of a statute of Louisiana conferring a privilege *in favor of the party injured,* to claims of representatives of deceased persons; and of this court in the case of The Dauntless, 129 Fed. 715, 64 C. C. A. 243. That part of the opinion of the Supreme Court which bears upon the subject is here quoted:

"Assuming for the present that the question of lien is material, we are next to inquire whether such lien is given by the local law of Louisiana.

We are cited in this connection to two articles of the Civil Code, the first of which (article 2315), as amended in 1884, declares that: 'Every act whatever of man that causes damages to another, obliges him by whose fault it happened to repair it; the right of this action shall survive, in case of death, in favor of the minor children or widow of the deceased, or either of them, and in default of these, in favor of the surviving father and mother, or either of them, for the space of one year from the death. The survivors above mentioned may also recover the damages sustained by them by the death of the parent, or child, or husband, or wife, as the case may be.'

"It was held by us in The Corsair, 145 U. S. 335 [12 Sup. Ct. 949, 36 L. Ed. 727], a case arising out of a collision which also took place on the lower Mississippi, that this local law did not give a lien or privilege upon the vessel, and that nothing more was contemplated by it than an ordinary action according to the course of the law as administered in Louisiana.

"Our attention is also called by the owners of the Dumois to subdivision 12 of article 3237 of the Civil Code, which reads as follows: 'Where any loss or damage has been caused to the person or property of any individual by any carelessness, neglect or want of skill in the direction or management of any steamboat, barge, flatboat, water craft or raft, the party injured shall have a privilege to rank after the privileges above specified.' No reliance was placed upon this article in the case of The Corsair, probably because it was thought to refer only to losses or damages to persons still living, and that an action would lie in favor of the party injured. Certainly, if this article had been supposed to give a remedy for damages occasioned by death, to the representatives of the deceased person, it would never have escaped the attention of the astute counsel who participated in that case. * * *

"In this country the law is so well settled that by the common law no civil action lies for an injury resulting in death, that we need only refer to the case of Insurance Co. v. Brame, 95 U. S. 754 [24 L. Ed. 580], and to the same doctrine applied in admiralty in the case of The Harrisburg, 119 U. S. 199 [7 Sup. Ct. 140, 30 L. Ed. 358]. The object of article 3237 was not to extend the cases in which damages might be recovered to such as resulted in death, but merely to provide that, in cases of damages to person or property, where such damage was occasioned by negligence in the management of any water craft, the party injured should have a privilege or lien upon such craft. We deem it entirely clear that the article was not intended to apply to cases brought by the representatives of a deceased person for damages resulting in death."

From this it is manifest that the right to a lien or privilege was, by the terms of the Louisiana statute, restricted to the individual victim of an injury. The literal words of the statute were deemed to express its exact meaning, and its benefits were not extended by judicial construction to others whose injuries were consequential. The Oregon statute is different. It does not specify the party in whose favor a lien upon a vessel may be asserted, otherwise than by the natural inference that he must be one having a legal claim to compensation, "for damages or injuries done to persons or property by such boat or vessel." The Oregon statute needs not to be construed in order to extend its benefits to persons additional to a specified party; and it should not be shorn of virtue by interpolating into it any fanciful classification of injuries, separating those causing death from other injuries. Being materially different from the Louisiana statute, The Oregon case is not overruled by, nor in conflict with, the decision of the Supreme Court in the Albert Dumois Case. Having stood as an authoritative interpretation of the statute of Oregon for more than 20 years, the failure of the state Legislature to enact amendments justifies a presumption of general approval by acquiescence.

Our first conclusion is that by the local statutes. vessels are subject to liens for maritime torts causing death happening in the state of Oregon.

[4] The third proposition finds support in numerous expressions in judicial decisions. Nevertheless by practice. and decisions of the Supreme Court the scope of the powers of the courts of the United States having admiralty jurisdiction has been actually enlarged. Although their jurisdiction remains restricted to litigation founded upon maritime business and maritime torts, the number of such cases which may be adjudicated in admiralty courts has been increased by state legislation creating new rights. After the decision in the case of The General Smith, 4 Wheat. 438, 4 L. Ed. 609, and until the enactment by Congress of a national lien law, it was only by exertion of the powers of courts of admiralty .in suits in rem against domestic vessels enforcing state lien laws that creditors found protection for debts for supplies, materials, and repairs, which would otherwise have been defeated by mortgages, charter parties, writs of attachment, executions, and bills of sale. The case of The Harrisburg, 119 U. S. 199, 7 Sup. Ct. 140, 30 L. Ed. 358, denied the right to recover damages for the death of a person resulting from a maritime tort, but now, by virtue of statutes enacted by the several states, the admiralty courts take cognizance of cases founded upon maritime torts causing death, and award damages therefor. 1 Am. & Eng. Enc. of L. & P. 1252; The City of Norwalk (D. C.) 55 Fed. 98, affirmed in 61 Fed. 364, 9 C. C. A. 521; The Glendale, 81 Fed. 633, 26 C. C. A. 500; The Willamette, 70 Fed. 874, 18 C. C. A. 366, 31 L. R. A. 715; Id., 72 Fed. '79; Humboldt Lumber Mfg. Association v. Christopherson, 73 Fed. 239, 19 C. C. A. 481, 46 L. R. A. 264; The Dauntless, 129 Fed. 715, 64 C. C. A. 243; The San Rafael, 141 Fed. 270, 72 C. C. A. 388; The Corsair, 145 U. S. 339, 12 Sup. Ct. 949, 36 L. Ed. 727; Workman v. New York, 179 U. S. 563, 21 Sup. Ct. 212, 45 L. Ed. 314; The Hamilton, 207 U. S. 398, 28 Sup. Ct. 133, 52 L. Ed. 264.

Upon the theory that a vessel, when abroad, is still part of the territory subject to the government of the state in which her home port is situated, state laws are enforceable against owners of vessels, for maritime torts committed on waters distant from the actual boundaries of the state which enacted the law. The Hamilton, 207 U. S. 398, 28 Sup. Ct. 133, 52 L. Ed. 264. The most important limitations on the power of the states to enact laws affecting commerce and shipping are these:

State laws cannot diminish the jurisdiction of the United States courts, which by the Constitution of the United States extend to all cases of admiralty and maritime jurisdiction. State legislation may not encroach upon the power of Congress to legislate, by enacting laws applicable to subjects concerning which the national will has been declared by congressional enactments. In other words, the states cannot add to nor take from laws enacted by Congress relating to subjects within the legislative power vested in Congress by the Constitution. These restrictions upon the power of the states to legislate leave them free to enact statutes creating rights and imposing obliga-

tions concerning subjects within the domain of the paramount author·ity of Congress to legislate, so long as congressional authority remains dormant by reason of failure to enact any statute relating to the same subject. Sherlock v. Alling, 93 U. S. 104, 23 L. Ed. 819.

This branch of American constitutional law, in its relation to commerce and navigation and causes of admiralty and maritime jurisdiction, has been illuminated by many instructive decisions of the Supreme Court, all of which are harmonious with the opinion of Mr. Justice Field in Sherlock v. Alling. The compulsory pilotage laws enacted by a number of the states control the navigation of ships in entering seaports and are admitted to be regulations of interstate and foreign commerce which is a subject of legislation within the powers conferred upon Congress by the Constitution. Nevertheless, so long as Congress refrains from exercising supreme authority these local statutes, and the rights and obligations which they create, may be enforced by the process of admiralty courts. By its decision in the case of Ex parte McNiel, 13 Wall. 236-243, 20 L. Ed. 624, the Supreme Court in effect affirmed a decree of the United States District Court for the Eastern District of New York, which obtained jurisdiction by attaching a foreign ship for half pilotage fees claimed by the libelant under a New York statute, and the concluding paragraph of the opinion by Mr. Justice Swayne contains the following broad and comprehensive statement of the rule on this subject:

"A state law may give a substantial right of such a character that, where there is no impediment arising from the residence of the parties, the right may be enforced in the proper federal tribunal, whether it be a court of equity, of admiralty, or of common law."

This doctrine is further expounded in the following cases: Cooley v. Board of Port Wardens of Philadelphia, 12 How. 299, 13 L. Ed. 996; The China, 7 Wall. 53-71, 19 L. Ed. 67; Homer Ramsdell Transp. Co. v. La Compagnie Générale Transatlantique, 182 U. S. 406-417, 21 Sup. Ct. 831, 45 L. Ed. 1155; Huus v. Steamship Co., 182 U. S. 392-397, 21 Sup. Ct. 827, 45 L. Ed. 1146.

For the reasons stated, and upon the authorites cited, we hold that the question constituting the second division of the main question in the case must also be decided adversely to the appellant.

[5] The fourth proposition cannot be controverted, but no inference can be fairly drawn therefrom which would exclude jurisdiction of suits in rem for maritime torts, other than collision cases; or limit the admiralty jurisdiction to proceedings for limitations of liability, with respect to statutory causes of action for injuries causing death. By the general maritime law, liens for injuries done by a ship constitute the foundation of proceedings in rem. A ship in commission and capable of doing mischief includes her hull and whatever else pertains to her as a complete entity, including masts, rigging, sails, steering gear, propelling machinery, furniture, anchors, master, officers, and crew. It is for the errors and omissions of duty of ship masters and mariners, constituting maritime torts, that vessels are subjected to claims for damages. In a brief filed by Mr. W. C. Bristol, as amicus curiæ, it is suggested that the admiralty rules have

distinctly provided what can and cannot be done in seeking remedies attached to, or given by, the maritime law, and that their enumeration of the forms of remedy in cases of admiralty and maritime jurisdiction operates as a denial of any other form of remedy not enumerated, and that by the general maritime law admiralty has "no jurisdiction in rem for personal torts." These suggestions can be answered best in the words of some of the most eminent of the justices of the Supreme Court:

"But this is not a proceeding against the owner; it is a proceeding against the vessel, for an offense committed by the vessel, which is not less an offense, and does not the less subject her to forfeiture, because it was committed without the authority, and against the will of the owner. It is true that inanimate matter can commit no offense. The mere wood, iron, and sails of the ship cannot, of themselves, violate the law. But this body is animated and put in action by the crew, who are guided by the master. The vessel acts and speaks by the master." Chief Justice Marshall, in United States v. The Little Charles, Fed. Cas. No. 15,612.

"It is not an uncommon course in the admiralty, acting under the law of nations, to treat the vessel in which or by which, or by the master or crew thereof, a wrong or offense has been done as the offender, without any regard whatsoever to the personal misconduct or responsibility of the owner thereof." Mr. Justice Story, in United States v. Brig Malek Adhel, 2 How. 233, 11 L. Ed. 239.

By the maritime law, "the vessel, as well as the owners, is liable to the party injured for damages caused by its torts. By that law the vessel is deemed to be an offending thing, and may be prosecuted, without any reference to the adjustment of responsibility between the owners and employés, for the negligence which resulted in the injury." Mr. Justice Field, in Sherlock v. Alling, 93 U. S. 108, 23 L. Ed. 819.

"In this country it has been established, by a series of judgments of the Supreme Court of the United States, that a libel in admiralty may be maintained against the ship for any personal injury, for which the owners are liable under the general law and independently of any local statute; accordingly, passengers have often maintained libels, as well against the ship carrying them as against other ships, for personal injuries caused by negligence for which the owners of the ship libeled were responsible." The New World, 16 How. 469, 14 L. Ed. 1019; The Washington, 9 Wall. 513, 19 L. Ed. 789; The Juniata, 93 U. S. 337, 23 L. Ed. 930; The City of Panama, 101 U. S. 453, 462, 25 L. Ed. 1061.

"The sixteenth rule in admiralty, which directs that 'in all suits for an assault or beating upon the high seas, or elsewhere within the admiralty and maritime jurisdiction, the suit shall be in personam only,' does not affect libels for negligence." Mr. Justice Gray, in The A. Heaton (C. C.) 43 Fed. 594–595.

"These rules, from 12 to 20 inclusive [29 Sup. Ct. xl], were intended to prescribe a remedy appropriate to each class of cases in admiralty, allowing in certain cases a joinder of ship and freight, or ship and master, or alternative actions against the ship, master, or owner alone. In no case, however, under these rules, except in possessory suits, can the ship and owner be joined in the same libel, though perhaps they may be in cases not falling within the rules." Mr. Justice Brown, in The Corsair, 145 U. S. 341–342, 12 Sup. Ct. 949, 950 (36 L. Ed. 727).

"Of course, as has been repeatedly declared by this court, by the general admiralty law of this country, subject to the exemption from process possessed by the national government, a ship, by whomsoever owned or navigated, is liable for an actionable injury resulting from the negligence of the master and crew of such vessel." Mr. Chief Justice White, in Workman v. New York, 179 U. S. 572, 573, 21 Sup. Ct. 212, 220 (45 L. Ed. 314).

In addition to the cases decided by the Supreme Court, cited in the above excerpt from Mr. Justice Gray's decision in The A. Heaton

Case, it is to be noted that this court affirmed decrees awarding damages for personal torts, in the case of The Iroquois, 118 Fed. 1003, 55 C. C. A. 497, and The Troop, 128 Fed. 856, 63 C. C. A. 584. The Iroquois Case was affirmed by the Supreme Court (194 U. S. 240, 24 Sup. Ct. 640, 48 L. Ed. 955), and in the Troop Case, by denial of a petition for a writ of certiorari, tantamount to a second affirmance, the Supreme Court sanctioned the decree for damages (195 U. S. 632, 25 Sup. Ct. 789, 49 L. Ed. 353).

These declarations of judges and decisions of the Supreme Court uphold the long-continued general practice of the District Courts of the United States maintaining jurisdiction of cases founded upon personal torts, and prove that the admiralty rules are not "restrictive of instances which give rise to proceedings in rem," except as therein expressly prescribed. Admiralty rule 15 and the law and rules relating to proceedings for limitations of liability are special, and not in any sense restrictive of the general powers of courts of admiralty. The power of the admiralty courts to adjudicate comprehends every variety of maritime torts which may be the foundation of a legal claim for compensation, and in all such cases a suit in rem affords the appropriate remedy. 1 Am. & Eng. Enc. of L. & P. 1245; The City of Seattle, 150 Fed. 537, 80 C. C. A. 279, 10 L. R. A. (N. S.) 969.

Referring to the fifth proposition, it is conceded that the libelant's cause of action is statutory; therefore the common-law rule has no relevancy. Our opinion with respect to the interpretation of the Oregon statutes and the rights of the libelant thereunder have been stated with sufficient elaboration, and it is unnecessary to make further comment upon the appellant's contention respecting the same.

The sixth proposition, as stated in appellant's brief, cites, as authorities supporting its contention, the following cases: The Corsair, 145 U. S. 335, at page 347, 12 Sup. Ct. 949, 36 L. Ed. 727; The Albert Dumois, 177 U. S. 258, 20 Sup. Ct. 595, 44 L. Ed. 751; The Onoko, 107 Fed. 985, 47 C. C. A. 111; The Mariska, 107 Fed. 989, 47 C. C. A. 115; The Dauntless, 129 Fed. 715–719, 64 C. C. A. 243; The Lotta (D. C.) 150 Fed. 219; Fisher v. Boutelle (D. C.) 162 Fed. 994; The Hamilton, 207 U. S. 398, 28 Sup. Ct. 133, 52 L. Ed. 264.

In the Corsair Case the Supreme Court held that the statute of Louisiana to which the opinion referred contained no suggestion of a lien, and therefore did not authorize a suit in rem. The lien statute of that state was not brought to the attention of the court nor considered. Having already quoted the relevant part of the opinion in the Albert Dumois Case, further comment thereon is unnecessary, except to add that the Supreme Court sustained claims of a widow and child and of a mother of deceased persons for damages caused by a maritime tort causing death; the damages to be paid from a fund produced in a proceeding under the limited liability act. In the two cases at the bottom of the list no claims based upon statutory liens were involved, and, so far as they touch the questions which we have to decide, they are authorities supporting the doctrine that rights created by state statutes affecting maritime causes of action can be enforced in the admiralty courts of the United States. The Lotta Case

is not in point except as the opinion states principles of the general maritime law which are not controverted in this case. The two decisions of the Circuit Court of Appeals for the Seventh Circuit have reference to statutes of Illinois, Wisconsin, and Michigan, and so far as they are adverse to our conclusions, we are obliged, with due deference to that court, to decline to yield to them as controlling authorities.

The pith of the sixth proposition is stated in the introductory part of this opinion. As stated in the brief the decision in the Dauntless Case was based upon the court's construction of the California statute. This court did not in that case overrule its previous decisions, giving effect to the Oregon statute, which we consider to be consistent with the jurisprudence of this country and harmonious with the decisions of the Supreme Court.

Our final conclusion is that the main question in the case, as stated, must be decided affirmatively, and consequently the decree of the District Court is affirmed.

NOTE.—The writer of this opinion believes that the Dauntless Case ought to be expressly overruled, but in this view I am but a minority of the court.

ROSS and GILBERT, Circuit Judges (concurring). We concur in the judgment and in the opinion, except in respect to what is said therein under the head of "the sixth proposition." The California statute as recited in the case of The Dauntless, 129 Fed. 715, 64 C. C. A. 243, differed in terms from the Oregon statute, did not expressly give a lien upon the vessel, and was construed by this court in that case as not, in effect, giving any such lien. Whether or not the court there rightly construed the statute of California is not in any way involved here. Acting upon that construction, as it did, the court in The Dauntless Case rightly held that there was no jurisdiction in the District Court of the libel in rem, which was in entire harmony with its previous decisions in the cases of The Willamette, 70 Fed. 874, 18 C. C. A. 366, 31 L. R. A. 715, and Laidlaw v. Oregon Ry. & Nav. Co., 81 Fed. 876, 26 C. C. A. 665.